OSTEOPATHIC HOSPITAL FOUNDERS ASSOCIATION, d/b/a Oklahoma Osteopathic Hospital, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 78–1807.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1980.

Decided March 6, 1980.

Clifton L. Elliott and Gina Kaiser of Spencer, Fane, Britt & Browne, Kansas City, Mo., for petitioner.

Christopher W. Katzenbach, Washington, D. C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John H. Ferguson, Atty., N. L. R. B., Washington, D. C., with him, on brief), for respondent.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This case is before the court upon the petition of Osteopathic Hospital Founders Association, d/b/a Oklahoma Osteopathic Hospital to review an order of the National Labor Relations Board in which the Board found the Hospital in violation of sections 8(a)(1), 8(a)(3) and 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1), (3) and (5). The Board filed a cross-application for enforcement of its order.

On May 1, 1978, the administrative law judge found that the Hospital violated: (1) section 8(a)(1) of the Act by interrogating two job applicants, Charles Montgomery and Dale Van Beber, concerning their mem-

bership in the International Union of Operating Engineers, Local 948, and by issuing threats to an employee and union activist, Joan Sartin; (2) section 8(a)(3) of the Act by failing to hire Montgomery and Van Beber and refusing to promote Joan Sartin because of their support for the Union; and (3) section 8(a)(5) of the Act by withdrawing recognition of the Union, and failing to furnish the Union information concerning the names and addresses of new employees in the bargaining unit.

On June 10, 1978, the Hospital filed with the Board a Motion for Leave to File an Amended Answer, to change its admission of the appropriateness of the bargaining unit represented by the Union to a denial thereof. It thereafter filed exceptions to the administrative law judge's findings, including the finding that the unit was appropriate.

The Board issued its decision on September 29, 1978. It denied the Hospital's motion to amend its answer and affirmed all but one of the administrative law judge's conclusions: it reversed the finding of a section 8(a)(1) violation based upon the Hospital's alleged interrogation of Montgomery and Van Beber. The Board's order requires the Hospital (1) to cease and desist from the unfair labor practices found; (2) to offer Sartin, Montgomery and Van Beber positions as stationary engineers and make them whole for any losses they may have suffered as a result of the discrimination; and (3) to post appropriate notices.

The only issues on appeal are whether there is substantial evidence to support the Board's findings that the Hospital violated section 8(a)(3) by discriminating against Sartin, Montgomery and Van Beber because of their union activities, and whether the Hospital violated section 8(a)(5) by withdrawing recognition of the Union on August 30, 1977.[1]

1. The Hospital no longer disputes the Board's finding that it committed a section 8(a)(1) violation by threatening Sartin with loss of benefits because of her role in the Union's organizational campaign. Brief of Petitioner at 25 n. 6.

2. Section 8(a)(3) of the Act provides in pertinent part:

## I.

### The 8(a)(3) Issues [2]

There is no question that if the Hospital indeed refused to promote Sartin or failed to hire Montgomery or Van Beber because of their Union activities, it thereby violated section 8(a)(3) of the Act. *Phelps Dodge Corp. v. N. L. R. B.*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Ann·Lee Sportswear, Inc. v. N. L. R. B.*, 543 F.2d 739 (10th Cir. 1976). Accordingly, our review is limited to whether there is substantial evidence to support the Board's findings that the Hospital was motivated by anti-union animus in failing to promote and refusing to hire these persons. *Id.*

In *Ann Lee Sportswear, Inc.*, 543 F.2d at 742, we stated:

"The findings of the Board with respect to questions of fact are conclusive if supported by 'substantial evidence' on the record, considered as a whole. 'Substantial evidence' is more than a mere scintilla and connotes such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Edison Co. v. NLRB*, 305 U.S. 197 at 229, 59 S.Ct. 206 [216], 83 L.Ed. 126 (1938)."

Therefore, in reviewing fact findings of the Board, "we do not sit as a super trial examiner, and do not weigh the credibility of one witness against another nor do we search for contradictory inferences." *N. L. R. B. v. Montgomery Ward & Co.*, 554 F.2d 996, 999 (10th Cir. 1977) (quoting *N. L. R. B. v. Central Machine & Tool Co.*, 429 F.2d 1127, 1129 (10th Cir. 1970), *cert. denied*, 401 U.S. 909, 91 S.Ct. 870, 27 L.Ed.2d 807 (1971)).

Under these standards, we conclude that the Board's findings on the section 8(a)(3) issues are supported by substantial evidence.

"It shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

## A.

### Joan Sartin

Joan Sartin, the dispatcher in the Hospital's maintenance and engineering department, was a well-known union activist who had directed the Union's organizational campaign among the maintenance employees in March, 1977. Rec., vol. I, at 512–513. In the latter Part of March, 1977, the Director of Plant Operations at the time, Richard Chartier, informed Sartin that she would never be considered for promotion or advancement as long as she was engaged in organization activities for the Union. Rec., vol. I, at 514.

On June 20, 1977, Sartin applied to the City of Tulsa for a first class engineers license. Rec., vol. I, at 521. Although she was not employed by the Hospital as an engineer, she had spent time on and off duty learning to operate the equipment. Rec., vol. I, at 517–521, 564–571. Sartin supported her application for a license with a letter signed both by the Hospital's director of plant operations and its chief engineer, attesting to the fact that she had worked around the boilers and other stationary equipment. Rec., vol. II, at 1124. She passed the written test and was awarded her first class license on July 19, 1977. Rec., vol. I, at 516, 521.

Shortly after she received her license, Sartin asked the new Director of Plant Operations, Mel Lyerla, about the possibility of her being promoted to fill a vacancy that had recently opened in the position of stationary engineer. Rec., vol. I, at 536–537. Sartin testified that Lyerla rejected her application out of hand, stating: "You will never be an engineer, nor will you ever be considered for promotion due to your union activities."[3] *Id.* A witness to that conversation supported her testimony. Rec., vol. I, at 633. Several days later, the Hospital wrote the Tulsa Board of Examiners a letter for the acknowledged purpose of having Sartin's first class engineers license revoked. Rec., vol. I, at 868–870, 905. After a hearing, however, Sartin was permitted to keep her license. Rec., vol. I, at 856–857.

■ Although the Hospital presented conflicting evidence at the hearing, the administrative law judge who "observed the witnesses and lived with the case"[4] credited Sartin's testimony. And as we recently pointed out in *N. L. R. B. v. Pepsi-Cola Bottling Co. of Topeka, Inc.*, 613 F.2d 267, 271 (10th Cir. 1980), "the determination of credibility is particularly within the province of the hearing officer." Upon review of the record as a whole, we conclude the evidence is sufficient to support the Board's finding that the Hospital unlawfully refused to promote Sartin because of her union activities.

## B.

### Montgomery and Van Beber

■ There is also substantial evidence to support the Board's finding of discrimination against the two job applicants. The job vacancies for which Montgomery and Van Beber applied were created by the discharge of four stationary engineers in connection with the work assignment dispute with the Union. When they came to the Hospital in response to a newspaper advertisement for stationary engineers, Lyerla interviewed them together. Rec., vol. I, at 456–457, 609, 730. Both men testified that shortly after the interview commenced, Lyerla offered them jobs; but when Lyerla later discovered that they were Union members, Lyerla informed them that he did not know whether he could hire them after all but would contact them that evening after he discussed their applications with the chief engineer, Melba

---

**3.** It is noteworthy that this conversation took place in the midst of the heated dispute between Lyerla and the Union regarding walk-in refrigerator work which the Union refused to perform; the dispute culminated in the discharge of all the members of the stationary engineers bargaining unit on August 4, 1977. Rec., vol. I, at 20–51.

**4.** *Universal Camera Corp. v. N. L. R. B.*, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951).

Jones. Rec., vol. I, at 459–464, 610–613. Lyerla did not call Montgomery or Van Beber that day or thereafter regarding employment at the Hospital.

■ Lyerla disputed the testimony of Montgomery and Van Beber. He contended he hired the two men and told them to report for specific shifts, but that he never heard from them again. Rec., vol. I, at 732–734, 736–739. However, the administrative law judge believed the contrary testimony, and, as noted in *Pepsi-Cola Bottling Co.*, it is not within our province to upset a credibility determination of a hearing officer absent extraordinary circumstances.

## II.

### The 8(a)(5) Issues[5]

The Hospital justifies its withdrawal of recognition of the Union on two grounds. First, it contends that the discharge and replacement of all of the members of the bargaining unit following the unlawful work stoppage gave rise to a good faith doubt on its part as to the Union's continuing majority status. Second, it asserts that the unit of stationary engineers is inappropriate as a matter of law; therefore, it is not obliged to bargain with the Union representing the engineers, and the Board is without authority to order it to do so. It justifies its failure to challenge the Board's unit determination before it entered into a contract with the Union on the ground that the law with respect to the appropriateness of stationary engineer units in the health care industry did not become clear until after such time.

### A.

### The replacement of the strikers

On August 30, 1977, Kenneth McEver, business manager for the Union, telephoned Carl D. Hall, then attorney for the Hospital, to set up a meeting for the negotiation of a new collective bargaining agreement. Rec.,

vol. I, at 640–641. However, Hall informed him that the Hospital was withdrawing recognition of the Union because it no longer represented a majority of the employees in the bargaining unit. *Id.* The Hospital contends that the replacement of all members of the bargaining unit supported at least a good faith doubt as to the Union's majority status, justifying its withdrawal of recognition. We disagree.

■ Even if the replacement of the discharged engineers gave rise to a good faith doubt as to the Union's majority, the Hospital's withdrawal of recognition on August 30, 1977 was unlawful. When a collective bargaining agreement is in effect between the parties, an incumbent union enjoys a virtually irrebuttable presumption of majority status as long as the agreement is entitled to "contract bar" protection. *Pioneer Inn Associates v. N. L. R. B.*, 578 F.2d 835 (9th Cir. 1978); *Hexton Furniture Co.*, 111 N.L.R.B. 342 (1955). Accordingly, "during this time, an employer cannot use doubt about a union's majority as a defense to a refusal-to-bargain charge." *N. L. R. B. v. Burns Security Services*, 406 U.S. 272, 290 n. 12, 92 S.Ct. 1571, 1583 n. 12, 32 L.Ed.2d 61 (1972); *see also Pioneer Inn Associates.* This rule applies even though a majority of the employees in the unit have freely abandoned the union. *N. L. R. B. v. Marcus Trucking Co.*, 286 F.2d 583 (2d Cir. 1961). *And see Confectionary & Tobacco Drivers & Warehousemen's Union, Local 805*, 312 F.2d 108 (2d Cir. 1963).

In the instant case, the Hospital withdrew recognition from the Union two months before the expiration of its one-year collective bargaining agreement, well within the term of the "contract bar". Therefore, even assuming the Hospital acquired a good faith doubt as to the Union's majority, it was not justified in withdrawing recognition.

■ Moreover, the Hospital's doubt as to the Union's majority status was not acquired "in good faith." If the Union lost its

5. Section 8(a)(5) provides: "It shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of

his employees, subject to the provisions of Section 9(a)."

majority by August 30, 1977, the loss was at least partly attributable to the Hospital's unfair labor practices. Not only did the Hospital refuse to promote and hire union supporters into the unit, but it engaged in other conduct designed to convey a coercive message to a union member, all in violation of the Act.

■ The Hospital "seeks to establish that at the same time and as part and parcel of its . . . threats and coercion, it acquired in good faith a basis for doubting the union's majority. This theory cannot prevail." *American Sanitary Products Co. v. N. L. R. B.*, 382 F.2d 53, 57 (10th Cir. 1967). As we pointed out in *Furr's Inc. v. N. L. R. B.*, 381 F.2d 562, 570 (10th Cir. 1967), "case law leaves no doubt that 8(a)(1) conduct is cogent evidence of lack of good faith," barring an employer from asserting a good faith doubt as to the union's majority status in defense of a refusal to bargain charge.

■ Here the Hospital committed numerous and serious violations of the Act calculated to decrease the level of support enjoyed by the Union within the unit. Accordingly, it would be particularly inappropriate to allow the employer to justify a refusal to bargain on the basis of a loss of majority status. As the administrative law judge pointed out, "the employer cannot use the result of its earlier unfair labor practices to justify its refusal to bargain with certified . . . representatives of its employees." Rec., vol. III, at 1259. *See Medo Photo Supply Corp. v. N. L. R. B.*, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944).

### B.

### *The appropriateness of the bargaining unit*

On February 7, 1975, the Regional Director decided, over the Hospital's objections, that the stationary engineers at the Hospital constituted an appropriate unit for collective bargaining and directed an election to be held among those employees. The Board granted the Hospital's Request for Review of the unit determination and affirmed the Regional Director's decision on June 8, 1976. An election was then held and the Union was certified as the bargaining representative of the Hospital's stationary engineers on July 20, 1976. Thereafter, the Hospital acquiesced in the unit determination until after the administrative law judge found it guilty of section 8(a)(5) violations over two years later.

Rather than refusing to bargain with the Union from the outset, which would have enabled the Hospital to promptly contest the Board's alleged improper certification, the Hospital negotiated a one-year collective bargaining agreement with the Union dated October 31, 1976. Even after the Hospital withdrew recognition from the Union on August 30, 1977, the Hospital failed to challenge the appropriateness of the unit. Indeed in its answer to the General Counsel's complaint, the Hospital specifically admitted the appropriateness of the unit of stationary engineers. It was over a month after the administrative law judge rendered his decision that the Hospital first contended the unit was inappropriate and attempted to defend against the section 8(a)(5) charges on that basis.

The Board, however, refused to entertain the Hospital's belated challenge, noting that to do so would not "effectuate the purposes and policies of the Act, particularly in view of the established bargaining history, execution and administration of a collective-bargaining agreement, and Respondent Hospital's failure to challenge the appropriateness of the unit at any time following our 1976 certification of the Union . . ." Rec., vol. III, at 1285 n. 1.

■ As a general rule, when the Board makes a unit determination pursuant to a petition filed under section 9(c) of the Act, its decision, if not appealed, is conclusive on the parties.[6] *Douds v. International*

---

6. There are, however, certain procedures by which an employer may subsequently seek to change a unit determination of the Board. If changed conditions later render the bargaining unit inappropriate as, for example, where the employer changes the job structure at his plant, the employer may petition the Board to clarify the bargaining unit. *See* Abodeely, *The*

*Longshoremen's Association*, 241 F.2d 278 (2d Cir. 1957). Although bargaining unit determinations are interlocutory and therefore not directly appealable, an employer may secure judicial review of a unit determination by simply refusing to bargain with a union after its certification. *N. L. R. B. v. Ideal Laundry & Dry Cleaning Co.*, 330 F.2d 712 (10th Cir. 1964). The employer may then raise the inappropriateness of the unit as a defense to a refusal to bargain charge, and litigate the issue before the Board and the courts.

■ In the instant case, the Hospital justifies its failure to seek judicial review of the unit determination at the outset by asserting that the law with respect to the appropriateness of a unit of stationary engineers did not become clear until after it had entered into the one-year contract with the Union on October 31, 1976. The Hospital points to *St. Vincent's Hospital v. N. L. R. B.*, 567 F.2d 588 (3d Cir. 1977), and *N. L. R. B. v. West Suburban Hospital*, 570 F.2d 213 (7th Cir. 1978), in which the courts began to reject the certification of units of stationary engineers in the health care industry. We do not believe these decisions justify the Hospital in raising the unit question now despite its original acquiescence.

In *International Telephone & Telegraph Corp. v. N. L. R. B.*, 382 F.2d 366 (3d Cir. 1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 829 (1968), the Third Circuit faced a factual setting somewhat similar to that of the instant case. The employer there also attempted to excuse his delay in challenging a unit determination on the ground that a court decision issued after the original certification rendered the unit inappropriate. The unit at issue was comprised of both professionals and non-professionals. The Board had certified the unit in 1951 without having provided the professionals a separate election.

After the parties in *International Telephone & Telegraph* entered into several agreements, a Supreme Court decision, *Lee-*

*dom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), was issued making clear that section 9(b)(1) of the Act prohibits the Board from designating a mixed unit of professionals and non-professionals. When the employer finally questioned the Board's certification of the unit in 1964 by refusing to bargain with the union, the Third Circuit refused to entertain the challenge, stressing that:

> "At no time between 1951 and 1964 did either the petitioner or the professional employees challenge the unit or seek its decertification. The petitioner could have brought the question of alleged improper certification to a head immediately by refusing to bargain in 1951 and litigating the issue before the Board and the courts in an unfair labor practice proceeding."

382 F.2d at 370. The court reasoned that under these circumstances, the parties had consented to the mixed bargaining unit and that, although section 9(b) of the Act prohibits the Board from certifying a mixed unit without an election, nothing in the Act prohibits the parties from establishing such a unit by agreement. *See Retail Clerks Union Local 324*, 144 N.L.R.B. 1247 (1963). Accordingly, the court held that even though the original certification was improper, the company was not justified in refusing to bargain with the union.

The Third Circuit's reasoning applies with equal force here. Whether or not the Board properly certified the unit of stationary engineers, there is no doubt the Hospital consented to the Board's unit determination. Accordingly, the Hospital may not now set up the improper certification as a defense to the section 8(a)(5) charge.

■ The Hospital attempts to distinguish *International Telephone & Telegraph* on the ground that the employer there entered into a subsequent collective bargaining agreement with the union after the Supreme Court issued its decision in *Leedom v. Kyne*, whereas the Hospital here

*N. L. R. B. and the Unit Clarification Petition*, 117 U.Pa.L.Rev. 1075 (1969). In addition, an employer may by agreement with the union

effect a change in a bargaining unit certified by the Board. *Douds v. International Longshoremen's Association*, 241 F.2d 278 (2d Cir. 1957).

allegedly refused to bargain with the Union as soon as the law with respect to the appropriateness of units of stationary engineers in health care facilities became clear.[7] However, we find this distinction without merit. The Hospital may not justify delay in challenging the certification even prior to *St. Vincent's Hospital* because the legislative history of the 1974 health care amendments to the National Labor Relations Act, which formed the basis of that decision, 567 F.2d at 590–591, was equally available to the Hospital in this case at the time the unit was certified.

Moreover, even where a subsequent court opinion totally reverses prior practice, courts are reluctant to permit untimely challenge. In *N. L. R. B. v. Newton-New Haven Co.*, 506 F.2d 1035 (2d Cir. 1974), the court was faced with a situation where a proceeding was held before a panel consisting of one Board member and two staff attorneys shortly before the Second Circuit decided in another case, *K. F. C. National Management Corp. v. N. L. R. B.*, 497 F.2d 298 (2d Cir. 1974), that it was a violation of the Act to allow such a panel to decide cases before the Board. Since the company did not make a timely objection to the make-up of the panel during the proceeding, however, the court refused to entertain the company's belated challenge upon review notwithstanding the subsequent case prohibiting such panels.

Similarly, in *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952), an applicant for a certificate of convenience did not object to the manner of his examiner's appointment at the appropriate time. He attempted to justify the delay on the ground that a Supreme Court decision was subsequently rendered making it clear that his examiner was improperly appointed. Nevertheless, the Supreme Court refused to consider the untimely challenge.

We believe the Board was correct when it stated that to entertain the Hospital's belated challenge of the unit would not "effectuate the purposes and policies of the Act." Rec., vol. III, at 1285. "A prime purpose of the Act is to foster industrial peace through collective bargaining." *Modern Plastics Corp. v. N. L. R. B.*, 379 F.2d 201, 204 (6th Cir. 1967). Moreover, the guiding principle in the selection of the appropriate unit is to "assure to *employees* the fullest freedom in exercising the rights guaranteed by this Act." 29 U.S.C. § 159(b) (emphasis added). To relieve the Hospital in this case of any further duty to bargain with the Union on the ground that the unit was improperly certified in 1976, notwithstanding its acquiescence therein, would not serve these overriding objectives. We conclude that the Hospital's failure to raise the unit question before it bargained with the Union should not be excused under the circumstances of this case.

The Hospital's petition to set aside the order of the Board is denied, and the Board's cross-application for enforcement of its order is granted.

---

**7.** Since the Hospital's original withdrawal of recognition was totally unrelated to the Hospital's present belief that the unit is inappropriate, we should be even more reluctant to entertain the Hospital's belated challenge than was the court in *International Telephone & Telegraph*, where the company's withdrawal of recognition was based solely upon the erroneous unit determination. Here, as the attorney of the Hospital stated at the time, the Hospital's withdrawal of recognition was based upon the Hospital's erroneous belief that the replacement of the strikers would support a good faith doubt as to the Union's continuing majority status. Rec., vol. I, at 652–653. Indeed, the idea of defending the section 8(a)(5) charge on the ground that the unit was inappropriate was an afterthought which was not conceived until the Hospital secured new legal counsel following the hearing before the administrative law judge.