931 F.2d 63
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HOWARD ELECTRICAL & MECHANICAL, INC., Respondent.
 No. 89-9532.
 United States Court of Appeals, Tenth Circuit.
 April 26, 1991.
 
 Before BALDOCK, McWILLIAMS and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 The National Labor Relations Board (Board) seeks enforcement of its order finding appellant Howard Electrical & Mechanical, Inc. (Howard) liable for unfair labor practices in its dealings with Plumbers Local Union No. 3 (plumbers) and Pipefitters Local Union No. 208 (pipefitters). Howard challenges the Board's order on three grounds. Our jurisdiction arises under 29 U.S.C. Secs. 160(e) & (f). We find Howard's arguments without merit and enforce the Board's order.
 
 I.
 
 2
 Howard is an electrical and mechanical contractor engaged in the building and construction trade in the Denver, Colorado vicinity. The plumbers and pipefitters comprise separate bargaining units representing plumbers, gas fitters, pipefitters and various foremen employed by Howard. Howard was signatory to a multi-employer collective bargaining agreement with the plumbers and pipefitters. This agreement recognized the two unions as the exclusive bargaining representatives for journeyman and apprentice plumbers, gas fitters and pipefitters. The agreement, which expired on May 31, 1983, set hourly wage rates and governed employer contributions to health and pension funds.
 
 
 3
 In September 1982, Howard withdrew from the multi-employer organization and commenced individual parallel negotiations with the plumbers and pipefitters. In March 1983, Howard proposed that the bargaining units described in the recognition clause of the agreements be modified to exclude "pre-apprentices" who lacked the skills of journeymen, but would be assigned to perform work under the direction of a journeyman. Howard sought to exclude this new class of pre-apprentice employees from union security and hiring hall provisions, compensate them at a rate lower than unit employees and exclude them from certain fringe benefits. Howard and the unions met in several negotiating sessions in 1983, but were unable to agree on this proposal. In December 1983, Howard resubmitted its pre-apprentice proposal to the two unions characterizing the proposal as its "final" or "last" offer and informing the unions that it intended to implement this offer effective January 1, 1984. Howard and the pipefitters continued to negotiate throughout January 1984, but were unable to reach agreement. Howard then asserted that negotiations were in a state of impasse and expressed its intention to implement unilaterally its latest offer. In April 1984, Howard hired its first pre-apprentice pipefitter without utilizing the union hiring hall; the first pre-apprentice plumber was hired the following month in the same manner. Negotiations continued in June 1984, whereupon Howard presented an additional proposal which it implemented unilaterally after the parties failed to reach agreement.
 
 
 4
 The pipefitters and plumbers filed unfair labor practice charges against Howard between July 24 and August 28, 1984, alleging, inter alia, that Howard committed an unfair labor practice by arguing to impasse on its pre-apprentice proposal and implementing unilaterally the proposal without union consent. The administrative law judge (ALJ) determined that the six-month limitations period was triggered by Howard's announcement in December 1983, that it intended to implement its pre-apprentice proposal, not when it actually hired the first pre-apprentices in April-May 1984. The ALJ also determined that, if Howard committed an unfair labor practice when it hired the pre-apprentice employees, then Howard necessarily committed an unfair labor practice the previous December, a time frame outside the six-month limitations period. Consequently, the ALJ determined that the action was time-barred. On appeal, the Board reversed the ALJ, concluding that Howard violated Sec. 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. Secs. 158(a)(5) & (1), by changing unilaterally the scope of the bargaining unit without the unions' consent. Howard Elec. & Mech., 293 N.L.R.B. No. 51 at 11-12 (1989). Rejecting the analysis of the ALJ, the Board determined that Howard's actual implementation of the pre-apprentice proposal in April-May 1984, not its expression of intent to implement its proposal in December 1983, formed the triggering date for the six-month statute of limitations; thus the action was not time-barred. Id. at 9-10. The Board also concluded that Howard violated Sec. 8(a)(5) when it implemented its June 1984 contract proposals without bargaining in good faith and without obtaining the unions' consent. Id. at 12-13.
 
 II.
 
 5
 Howard challenges the Board's order on three grounds: 1) the action was commenced outside the six-month limitation period, 2) insufficient evidence supports the Board's finding that Howard committed an unfair labor practice, and 3) the Board contravened its own precedent in bringing an unfair labor practices action against Howard in the absence of certification of the unions' majority status. We review orders of the National Labor Relations Board to determine whether "the Board correctly applied the law and if its findings are supported by substantial evidence in the record as a whole." Glazers Local Union No. 558 v. NLRB, 787 F.2d 1406, 1411 (10th Cir.1986).
 
 A.
 
 6
 Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board...." 29 U.S.C. Sec. 160(b). In Local Lodge No. 1424, Int'l Ass'n of Mach. v. NLRB, 362 U.S. 411 (1960), the Supreme Court held that, although the Board may consider conduct occurring more than six months prior to the alleged unfair labor practice, it may not rely upon the time-barred conduct in establishing the elements of a violation. Id. at 415. Rather, the unfair labor practice must be established by conduct which, "standing alone," falls within the statutory period. Id. The Court explained:
 
 
 7
 [I]n applying rules of evidence as to the admissibility of past events, due regard for the purposes of Sec. 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose Sec. 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.
 
 
 8
 Id. at 416-17 (footnote omitted). The six-month limitations period under Sec. 10(b) is not triggered by a party's notice that it intends to commit an unfair labor practice; the clock does not commence to run until the alleged unfair labor practice actually is committed. American Distrib. Co. v. NLRB, 715 F.2d 446, 452 (9th Cir.1983), cert. denied, 466 U.S. 958 (1984).
 
 
 9
 In the instant case, Howard contends that the Board should have concluded that, for purposes of Sec. 10(b), Howard's alleged unfair labor practice was committed in December 1983, when Howard announced its intention to implement its pre-apprentice proposal after bargaining to impasse. The date on which Howard gave notice of its intention to commit an unfair labor practice, however, is irrelevant because the Board found that Howard violated Sec. 8(a)(5) when it implemented its pre-apprentice proposal in April-May 1984. Although Howard also may have violated the Act in December 1983, when it pressed its pre-apprentice proposal to impasse, its unilateral implementation of this proposal during spring 1984, "standing alone," was sufficient independently to establish a violation of Sec. 8(a)(5). See Local Lodge No. 1424, 362 U.S. at 415.
 
 B.
 
 10
 Collective bargaining under the Act is divided into two primary subject areas: mandatory and permissive. Facet Enter. v. NLRB, 907 F.2d 963, 975 (10th Cir.1990). Wages, hours and working conditions comprise mandatory subjects of bargaining; permissive subjects cover all other areas. Id. Thus, the scope of a bargaining unit constitutes a permissive subject of bargaining. Id. Either party to labor negotiations may bargain to impasse[1] over a mandatory subject of bargaining and take reasonable unilateral action once impasse is reached, provided the previous contract has expired. Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec., 909 F.2d 1379, 1383-84 (10th Cir.1990), cert. denied, 111 S.Ct. 958 (1991). On the other hand, an employer who bargains to impasse and then takes unilateral action on the scope of the bargaining unit violates Sec. 8(a)(5), regardless of whether the unit previously has been certified by the Board. Facet, 907 F.2d at 975 (employer violated Sec. 8(a)(5) by insisting to impasse on permissive subject of bargaining and unilaterally implementing proposal once impasse was reached).
 
 
 11
 In the instant case, the record contains substantial evidence that Howard sought to alter the bargaining unit by introducing a new class of non-union, pre-apprentice employees to perform work formally done by unit employees. There was nothing wrong with advancing this proposal initially; however, as a permissive subject of bargaining, the unions were not obligated to bargain over it. Thus, unlike a mandatory bargaining issue such as wages, hours or working conditions, Howard was not free to implement unilaterally its pre-apprentice proposal upon impasse. Accordingly, Howard violated Sec. 8(a)(5) and (1) of the Act when it hired its pre-apprentice plumbers and pipefitters in April-May, 1984, without the unions' consent, as well as when it implemented its June proposals unilaterally. See id.
 
 C.
 
 12
 Howard finally contends that the Board ignored its own precedent in John Dekleva & Sons, 282 NLRB 1375 (1987), enf'd sub nom. 843 F.2d 770 (3d Cir.), cert. denied, 488 U.S. 889 (1988), when it found that Howard committed unfair labor practices by unilaterally altering the bargaining unit after expiration of the collective bargaining agreement. Dekleva overturned the "conversion doctrine" under which building trade unions who were signatories to a 29 U.S.C. Sec. 158(f) pre-hire agreement could evolve into 29 U.S.C. Sec. 159(a) exclusive bargaining representatives without having their majority status established through election and Board certification. Prior to the Board's decision in Dekleva, Howard stipulated that both unions were exclusive bargaining representatives of their respective units under Sec. 159(a). After Dekleva, Howard argued before the Board that it was not obligated to recognize the plumbers and pipefitters as exclusive bargaining representatives in the post-contract period because neither union had its majority status certified through a Board-sponsored election. Noting that Howard never argued the effect of Dekleva before the ALJ, despite the fact that the decision was handed down a month before the ALJ's decision issued, the Board declined to consider Howard's argument because it was untimely. Howard Elec., slip op. at 5 n. 5.
 
 
 13
 Even where a subsequent decision totally reverses a prior practice, this court is reluctant to permit an untimely challenge to the Board's determination. Osteopathic Hosp. Founder Ass'n v. NLRB, 618 F.2d 633, 641 (1980). In the instant case, we are reluctant to consider Howard's untimely reliance on Dekleva because Howard's unilateral implementation of its pre-apprentice proposal was totally unrelated to its present belief that the unions were not exclusive bargaining representatives. See id. at 641 n. 7. Moreover, Howard had a full month to argue the effect of Dekleva before the ALJ or move to reopen the proceeding to consider evidence on the unions' majority status. We must therefore conclude that the Board acted within its discretion in holding that Howard's failure timely to raise Dekleva before the ALJ precluded consideration of that issue for the first time on review. See Jason/Empire, Inc. v. NLRB, 518 F.2d 7, 8 (10th Cir.1975) (per curiam) (Board has discretion to refuse to consider issues not timely raised).
 
 
 14
 ENFORCEMENT GRANTED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 An "impasse" in labor negotiations exists when the parties have exhausted all possibility of concluding an agreement and further negotiations would be futile. Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech., 909 F.2d 1397, 1981 n. 2 (10th Cir.1990), cert. denied, 111 S.Ct. 958 (1991)