**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 28 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NATIONAL LABOR RELATIONS
BOARD,

Petitioner,

v.

F & A FOOD SALES, INC.,

Respondent.

No. 98-9522

**APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD**
**(Case No. 17-CA-18391)**

Christopher W. Young, Senior Attorney (Frederick C. Havard, Supervisory Attorney, Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, and John D. Burgoyne, Acting Deputy Associate General Counsel, with him on the brief), National Labor Relations Board, Washington, DC, appearing for Petitioner.

Anthony John Powell, Martin, Churchill, Blair, Hill, Cole & Hollander, Chartered, Wichita, Kansas, appearing for Respondent.

Before **TACHA**, **KELLY**, and **LUCERO**, Circuit Judges.

**TACHA**, Circuit Judge.

    The National Labor Relations Board (NLRB or "Board") petitions for enforcement

of the Decision and Order it issued to Respondent F & A Food Sales, Inc. ("F&A") on

March 27, 1998.  We exercise jurisdiction under 29 U.S.C. § 160(e) and grant the enforcement.

## I.  Background

In August 1992, the NLRB certified the International Association of Machinists and Aerospace Workers, District Lodge 70, AFL/CIO ("Union") as the exclusive collective bargaining representative of a unit of F&A employees ("Unit").  The Unit comprised various subclassifications of employees associated with F&A's Concordia, Kansas transportation department.  F&A and the Union entered into a collective bargaining agreement (CBA) effective from September 4, 1993 to September 4, 1996.  The CBA memorialized F&A's recognition of the Union as sole collective bargaining agent for the Unit.  The CBA also reserved F&A's right to subcontract work as the company deemed necessary.

In December 1993, F&A decided to permanently close all trucking operations and subcontract the services performed by the Unit to Ryder Dedicated Logistics, Inc. ("Ryder").  F&A and the Union then entered into a supplemental agreement.  Pursuant to this agreement, the Union  formally recognized the subcontracting arrangement and declined to object to it.  The subcontracting arrangement took effect in February 1994.  Ryder operated from the same facility, used the same trucks, and employed substantially the same employees as had F&A.  The Union did not represent or seek to represent the transport workers while Ryder employed them.

In July 1995, Ryder terminated its subcontracting agreement, thereby forcing F&A to resume its own trucking operations in August. Again, the facility and the trucks remained the same. In addition, F&A hired a majority of Ryder's employees. The Union then asserted its right to represent the transport employees under the CBA, which by its terms remained in effect. F&A refused to recognize the Union because (1) the Union did not represent the workers during their employment with Ryder and (2) less than a majority of the original F&A employees hired by Ryder returned to F&A when Ryder ended the subcontracting arrangement.

The Union filed a charge of unfair labor practices with the NLRB in January 1996. It alleged that F&A had violated § 8(a)(1) and § 8(a)(5) of the National Labor Relations Act (NLRA or "Act"), 29 U.S.C. § 158(a)(1), (a)(5), by failing to apply the terms of the CBA and refusing to recognize the Union's bargaining rights. An Administrative Law Judge (ALJ) decided in favor of the Union.

The ALJ found that ordinary contract-bar principles precluded F&A's claim that the Ryder hiatus effectively terminated the CBA. The ALJ also found that F&A did not succeed to Ryder's nonunion status under the successorship doctrine when F&A resumed operation of its transportation department. Finally, the ALJ rejected F&A's assertion that the Union waived its right to represent the employees because it did not seek to represent them during the Ryder hiatus.

The ALJ ordered F&A to, inter alia, (1) recognize and bargain with the Union, (2)

abide by the CBA until the parties could negotiate another agreement, (3) compensate the employees for any losses that they might have sustained as a consequence of F&A's violations, and (4) prominently post copies of a notice stating that it would comply with the ALJ's decision. F&A filed exceptions with the NLRB, and the Board affirmed. The Board then petitioned this court for enforcement of its order.

## II. Standard of Review

We review the NLRB's legal determinations de novo and "uphold the NLRB's factual findings if they are supported by substantial evidence in the record as a whole." Albertson's, Inc. v. NLRB, 161 F.3d 1231, 1235 (10th Cir. 1998). We must bear in mind that Congress delegated primary responsibility for interpretation of the NLRA to the NLRB. Colorado-Ute Elec. Ass'n v. NLRB, 939 F.2d 1392, 1400 (10th Cir. 1991). Thus, we will enforce an NLRB order unless the Board's judgment (1) "has no reasonable basis in the law," (2) "is fundamentally inconsistent with the NLRA and an attempt to usurp" Congress's policymaking authority, or (3) indicates that "the Board has moved into a new area of regulation which Congress has not committed to it." Id. (internal quotation marks and citation omitted).

## III. The Contract Bar Doctrine

F&A asserts that the contract bar doctrine does not apply to this case. Under the NLRB's contract bar rule, "if an employer and a union have entered into a [CBA], the agreement constitutes a bar to the holding of a representation election for the life of the

agreement, up to a maximum of three years." NLRB v. Arthur Sarnow Candy Co., 40 F.3d 552, 557 (2d Cir. 1994); see Osteopathic Hosp. Founders Ass'n v. NLRB, 618 F.2d 633, 638 (10th Cir. 1980) (acknowledging the existence of the contract bar rule).[1] Thus, the contract bar rule "prohibits employers from petitioning the Board for decertification of a union and from repudiating the contract or withdrawing recognition from and refusing to bargain with a union during the term of the [CBA]." NLRB v. Rock Bottom Stores, Inc., 51 F.3d 366, 370 (2d Cir. 1995).

The purpose of the contract bar rule is "to promote industrial peace by stabilizing, for a reasonable term, a contractual relationship between employer and union." Rock Bottom Stores, Inc., 51 F.3d at 370. Consequently, "[t]he rule applies in the absence of unusual circumstances" and "even when a union has lost majority support." Rock Bottom Stores, Inc., 51 F.3d at 370; see Osteopathic Hosp. Founders Ass'n, 618 F.2d at 638 ("When a [CBA] is in effect between the parties, an incumbent union enjoys a virtually irrebuttable presumption of majority status as long as the agreement is entitled to 'contract bar' protection."); id. ("[The contract bar] rule applies even though a majority of the employees in the unit have freely abandoned the union.")

However, "[t]he Board has recognized an exception to the contract bar rule where,

---

[1]However, "the Board has established a thirty-day 'open period' beginning ninety days before the expiration of the contract and ending sixty days before the expiration of the contract, during which election petitions may be filed." NLRB v. Katz's Delicatessen, Inc., 80 F.3d 755, 760 n.3 (2d Cir. 1996).

after an indefinite period of closing, an employer resumes operations with new employees." El Torito-La Fiesta Restaurants, Inc. v. NLRB, 929 F.2d 490, 493 (9th Cir. 1991). "[T]he essential factor in finding a valid CBA to be a bar after a shutdown in operations is the continuing existence of the bargaining unit." Id.

> A bargaining unit is comprised of jobs or job classifications and not of the particular persons working at those jobs at any given time. Thus a change in the character of the work done will suggest that the bargaining unit did not remain intact, whereas a change in the individual workers will not necessarily imply the same thing.

Id.

In El Torito-La Fiesta Restaurants, Inc., El Torito purchased a restaurant and agreed to adopt the existing CBA and recognize Local 100 as the collective bargaining representative for the covered employees. Id. at 492. El Torito then closed the restaurant for remodeling and reopened it fourteen months later. Id. Only eight of the restaurant's original 80 or 90 employees were among the 180 to 200 El Torito employees after the remodeling. Id. Local 100 demanded that El Torito recognize it and apply the CBA. Id. El Torito refused.

The NLRB held that the contract bar rule applied and ordered El Torito to recognize the Union and bargain with it. Id. at 492. Even though there had been a substantial change in the employees who comprised the bargaining unit, the Board found that the unit remained intact throughout the hiatus because (1) the fourteen-month

shutdown was temporary, (2) the changes in El-Torito's operations were merely cosmetic, and (3) the employees reasonably expected reemployment. See id. at 493; cf. NLRB v. Coca-Cola Bottling Co., No. 30-UC-321, 1993 WL 92246, at *1 (N.L.R.B. Mar. 26, 1993) (finding, in a unit clarification case, that production employees were not properly included in a bargaining unit after a lengthy twelve-year hiatus during which the employer ceased production and employed no production employees).

In the instant case the Unit remained intact throughout the Ryder hiatus. First, like El Torito, F&A closed its Concordia, Kansas transportation department for only a short period of time. Second, there were almost no changes to F&A's operations during the hiatus. Ryder used F&A's facility and trucks and employed many of F&A's employees. When F&A resumed responsibility for its transportation department, the facility and the trucks remained the same. F&A also hired many of Ryder's employees. The only difference in F&A's operations was that less than a majority of the Unit's original members returned to F&A after the hiatus. Thus, as in El Torito, even though the Unit was comprised of different individuals after the Ryder hiatus, the character of the Unit's work did not change. Accordingly, we hold that the contract bar rule applies to the instant case and therefore F&A must comply with the CBA.

F&A insists that the successorship doctrine, not the contract bar rule, applies to this case. Specifically, F&A argues that it succeeded to Ryder's nonunion status when it resumed operation of the transportation department. We agree with the ALJ that the

-7-

successorship doctrine is inapplicable under the circumstances of this case. F&A simply returned to its status as original employer after a short hiatus, agreed to by the Union, with no substantial changes in the original employment relationship.

F&A also contends that the Union waived its representation rights because it did not seek to represent the Unit during the Ryder hiatus. This contention is meritless. By agreeing to the Ryder hiatus, the Union did not waive its rights under the CBA. See Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708 (1983) (Waiver of union's statutorily protected right must be "clear and unmistakable."); accord Intermountain Elec. Ass'n v. NLRB, 984 F.2d 1562, 1567 (10th Cir. 1993). On the contrary, the Union merely acquiesced to a subcontracting arrangement expressly contemplated by the CBA. The Union's reassertion of its representation rights after the subcontract was terminated buttresses our finding that F&A, the Union, and the transportation Unit simply resumed their earlier employment relationship after the Ryder hiatus. Under these circumstances, the contract bar rule disposes of the issues in this case.

AFFIRMED.