# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kaolin Workers Union,          :
               Petitioner    :
       v.               :
                           :
Pennsylvania Labor Relations Board,  :   No. 1433 C.D. 2015
              Respondent  :   Argued: May 11, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COVEY                  FILED: June 15, 2016


Kaolin Workers Union (Union) petitions this Court for review of the Pennsylvania Labor Relations Board's (Board) July 21, 2015 order dismissing the Union's exceptions and finalizing the Nisi Order of Decertification. The sole issue before this Court is whether the Board erred by adopting the three-year contract bar provision[1] contained in Pennsylvania's Public Employe Relations Act (PERA)[2] and applying it to an action filed under the Pennsylvania Labor Relations Act (PLRA).[3]

On September 15, 2014, Roberto Morales (Morales), an employee of Kaolin Mushroom Farms (Employer), filed a Petition for Decertification (Petition) with the Board under the PLRA, alleging that 30% or more of Employer's employees no longer desired to be represented by the Union, and requesting the Board to

---

[1] The three-year contract bar provision prohibits employees from changing or seeking to decertify their exclusive bargaining representative during the first three years of a collective bargaining agreement.

[2] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

[3] Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1-211.13.

schedule a hearing and order an election pursuant to Section 7(c) of the PLRA.[4]  The Petition was accompanied by a Showing of Interest to support Morales' contention that at least 30% of the eligible employees desired to decertify the Union as their bargaining representative.  On September 24, 2014, the Board Secretary (Secretary) dismissed the Petition as untimely.  The Secretary stated that, pursuant to Section 7(c) of the PLRA, the Petition was barred by the existing collective bargaining agreement (CBA), which expires on October 2, 2016.

On October 14, 2014, Morales and Employer each filed timely exceptions with the Board challenging the Petition's dismissal.  Morales alleged in his exceptions that the parties' CBA is effective from August 3, 2009 through October 2, 2016, and that allowing the parties' seven-year contract to bar the Petition would be an unreasonable limit on the employees' associational rights under the PLRA.  Both Morales and Employer urged the Board to apply a three-year contract bar to the present matter and allow an election to be held.  On October 31, 2014, the Union filed a Charge of Unfair Labor Practices against Employer.

On November 4, 2014, the Union filed a Response to Exceptions alleging that Morales and Employer conceded that the Petition was barred by the parties' CBA.  The Union further asserted that the Board is not authorized to adopt a three-year contract bar in contravention of Section 7(c) of the PLRA.  On November 18, 2014, citing to the Board's previous adoption of the three-year contract bar under the PLRA and the Police and Firemen Collective Bargaining Act, commonly referred to as Act 111,[5] the Board remanded the matter to the Secretary with the direction to order a hearing.  On November 24, 2014, the Secretary issued a Complaint and Notice of Hearing setting December 23, 2014 as the hearing date for the Union's

_____

[4] 43 P.S. § 211.7(c).
[5] Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1-217.10.

unfair labor practice charge. The hearing was continued at the parties' request. On January 5, 2015, the Board received a letter from the Union withdrawing the charge.

On January 23, 2015, the Board issued an Order and Notice of Hearing directing that a prehearing telephone conference (Conference) be held on February 11, 2015, and a hearing be held on March 10, 2015 before a Board Hearing Examiner concerning Morales' Petition. During the February 11, 2015 Conference, the parties agreed to consider entering into a memorandum of agreement for the conduct of an election (Memoranda). On March 2, 2015, Employer, Morales and the Union filed identical Memoranda which each executed, wherein, they stipulated to the bargaining unit composition, the election site, the ballot position, the eligibility list, and other matters pertaining to the conduct of the election. On March 6, 2015, the Board issued an Order and Notice of Decertification Election directing that a secret ballot election be conducted on March 19, 2015 among Employer's eligible employees to ascertain whether the employees wished the Union to continue to be their exclusive bargaining representative.

On March 19, 2015, a Board election officer conducted the election. The election results were 67 votes for the Union and 94 votes for No Representative. On March 27, 2015, the Board issued a Nisi Order of Decertification certifying the election's results and decertifying the Union as the exclusive representative of the Employer's employees within the stipulated bargaining unit. On April 14, 2015, the Union filed timely exceptions with the Board challenging the Board's adoption of a three-year contract bar contrary to Section 7(c) of the PLRA, and its Order remanding the matter for a hearing and decertification election. In its exceptions, the Union reiterated the arguments it had set forth in its November 4, 2014 exception response. On May 6, 2015, Employer timely responded to the exceptions. On July 21, 2015,

the Board dismissed the Union's exceptions and finalized the Nisi Order of Decertification. The Union appealed to this Court.[6]

Initially, Section 2 of the PLRA expressly provides in pertinent part:

(b) Experience has proved that protection by law of the right of employes to organize and bargain collectively removes certain recognized sources of industrial strife and unrest, encourages practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours or other working conditions, and tends to restore equality of bargaining power between employers and employes.

(c) In the interpretation and application of [the PLRA] and otherwise, **it is hereby declared to be the public policy of the State** to encourage the practice and procedure of collective bargaining and **to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing**, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from the interference, restraint or coercion of their employers.

(d) **All the provisions of** [the PLRA] **shall be liberally construed for the accomplishment of this purpose**.

43 P.S. § 211.2 (emphasis added). Further,

[C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of

---

[6] Our scope of review 'on appeals from orders of the Board certifying exclusive bargaining representatives is limited to determining whether the Board's findings are supported by substantial and legally credible evidence and whether the Board's conclusions are reasonable and not arbitrary, capricious or illegal.' *Kaolin Mushroom Farms, Inc. v.* [*Pa.*] *Labor Relations* [*Bd.*]*,* 702 A.2d 1110, 1115 n. 5 (Pa. Cmwlth. 1997), *appeal dismissed as having been improvidently granted, . . .* 720 A.2d 763 ([Pa.] 1998). 'Additionally, if the Board's findings are supported by substantial evidence, they are conclusive for purposes of appellate review.' *Id.*

*Blue Mountain Mushroom Co., Inc. v. Pa. Labor Relations Bd.,* 735 A.2d 742, 746 (Pa. Cmwlth. 1999).

discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution . . . [T]he mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

[*Pa. Soc. Servs. Union, Local 668 v. Pa. Labor Relations Bd.,* . . . 392 A.2d 256 (Pa. 1978)] (*quoting* . . . *In re Petition of Acchione,* . . . 227 A.2d 816, 820 ([Pa.] 1967)). The Board's determination in discharging its duty under PERA is entitled to a measure of deference from reviewing courts.

*Ass'n of Pa. State Coll. & Univ. Faculties v. Pa. Labor Relations Bd.,* 8 A.3d 300, 304-05 (Pa. 2010).

The Union argues that the last sentence of Section 7(c) of the PLRA requires a contract bar until the end of the current CBA which, in this case, would be October 2, 2016. Section 7(c) of the PLRA provides in its entirety:

Whenever a question arises concerning the representation of employes[,] the [B]oard may, and, upon request of a labor organization, or an employer who has not committed an act herein defined as unfair labor practice, or any group of employes in an appropriate unit representing by petition [30%] or more of the employes of that unit, shall investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected. In any such investigation, the [B]oard shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under [S]ection [8 of the PLRA, 43 P.S. § 211.8], or otherwise, and may utilize any suitable method to ascertain such

5

> representatives, except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days after such request is filed. **Any certification of representatives by the [B]oard shall be binding for a period of one year, or for a longer period if the contract so provides, even though the unit may have changed its labor organization membership**.

43 P.S. § 211.7(c) (emphasis added).

The Board maintains that the term of "one year or . . . longer . . . if the contract so provides," refers to the Union's original certification and does not reset with every new contract. *Id.* The Board explained that the purpose of the one-year contract bar or longer if the contract so provides is to give the newly elected union at least a year to bargain with the employer without fear of a rival union coming in and pushing it out before the newly elected union has had an opportunity to bargain for a CBA. The Board specifically opined that "Section 7(c) of the PLRA **does not** set forth a maximum limit on the number of years that a contract may bar a representation petition." Board Final Order at 2 (emphasis added). Based upon the Board's interpretation, because the Union was certified in 1996, the "one year or longer if the contract so provides" ended either in 1997, or the time period contained in the first CBA, if set forth therein, following the Union's certification.

The law is well established that "the Board's interpretation of its governing statute is to be given controlling weight unless clearly erroneous." *City of Erie v. Pa. Labor Relations Bd.,* 32 A.3d 625, 631 (Pa. 2011). "This [C]ourt will not lightly substitute its judgment for that of the [Board]; the [Board] possesses administrative expertise in the area of public employee labor relations and should be shown deference." *Phila. Corr. Officers Ass'n v. Pa. Labor Relations Bd.,* 667 A.2d 459, 461 n.2 (Pa. Cmwlth. 1995). Moreover, the Board looked to the National Labor Relations Board's (NLRB) precedent for guidance in the instant case as it has been directed to do by our Supreme Court in the absence of explicit language contained in

6

the PLRA. *Chambersburg Borough v. Pa. Labor Relations Bd.,* 106 A.3d 212 (Pa. Cmwlth. 2014).

> The term [of a contract bar for future contracts] is not defined in the PLRA and the [application] of the [three-year contract bar] is an issue of first impression. However, because the PLRA is patterned after the National Labor Relations Act (NLRA), [29 U.S.C. §§ 151-169,] *Kerr v. Butler* [*Bldg.*] *Trades Council, AFL–CIO, . . .* 288 A.2d 525, 528 ([Pa.] 1972), **in interpreting the PLRA our Courts have 'not hesitated to consider, and to follow, federal interpretation of the NLRA[.]'** *Office of Admin*[.] *v.* [*Pa.*] *Labor Relations* [*Bd.*]*, . . .* 916 A.2d 541, 550 ([Pa.] 2007).

*Id. at* 221 (footnote omitted; emphasis added); *see also Commonwealth v. Pa. Labor Relations Bd.,* 826 A.2d 932, 934 (Pa. Cmwlth. 2003) ("When there are no Pennsylvania cases on point, we have been encouraged by the Supreme Court of Pennsylvania to follow the NLRB cases interpreting provisions of the NLRA similar to the PERA.").

The United States Court of Appeals in various circuits have interpreted the "contract bar rule" as follows:

> Under the NLRB contract bar rule, 'if an employer and a union have entered into a [CBA], the agreement constitutes a bar to the holding of a representation election for the life of the agreement, **up to a maximum of three years**.' [*Nat'l Labor Relations Bd.*] *v. Arthur Sarnow Candy Co.,* 40 F.3d 552, 557 (2d Cir. 1994); *see Osteopathic Hosp. Founders Ass'n v.* [*Nat'l Labor Relations Bd.*]*,* 618 F.2d 633, 638 (10th Cir. 1980) (acknowledging the existence of the contract bar rule). Thus, the contract bar rule 'prohibits employers from petitioning the [NLRB] for decertification of a union and from repudiating the contract or withdrawing recognition from and refusing to bargain with a union during the term of the [CBA].' [*Nat'l Labor Relations Bd.*] *v. Rock Bottom Stores, Inc.,* 51 F.3d 366, 370 (2d Cir. 1995).

The purpose of the contract bar rule is 'to promote industrial peace by stabilizing, for a reasonable term, a contractual relationship between employer and union.' *Rock Bottom Stores, Inc.,* 51 F.3d at 370. Consequently, '[t]he rule applies in the absence of unusual circumstances' and 'even when a union has lost majority support.' *Rock Bottom Stores, Inc.,* 51 F.3d at 370; *see Osteopathic Hosp. Founders Ass'n,* 618 F.2d at 638 ('When a [CBA] is in effect between the parties, an incumbent union enjoys a virtually irrebuttable presumption of majority status as long as the agreement is entitled to 'contract bar' protection.'); *id.* ('[The contract bar] rule applies even though a majority of the employees in the unit have freely abandoned the union.')[.]

*Nat'l Labor Relations Bd. v. F&A Food Sales, Inc.,* 202 F.3d 1258, 1260-61 (10th Cir. 2000) (footnote omitted; emphasis added); *see also Donald Schriver, Inc. v. Nat'l Labor Relations Bd.,* 635 F.2d 859, 868 n.10 (D.C. Cir. 1980) ("Under normal 'contract-bar' rules, an election petition for representative status may not be filed during the term of a [CBA] that has a duration of up to three years, or during the first three years of an agreement of longer duration[.]").

Further, where the PLRA is silent, our Supreme Court "look[s] for guidance, therefore, to other statutes enacted by the Pennsylvania Legislature regarding the selection of collective bargaining representatives." *Whitaker Borough v. Pa. Labor Relations Bd.,* 729 A.2d 1109, 1111 (Pa. 1999). The PERA establishes a three-year contract bar to be applied in circumstances such as those in this case. Specifically, Section 605(7)(i) of PERA provides:

No election shall be conducted pursuant to this section in any appropriate bargaining unit within which in the preceding twelve-month period an election shall have been held nor during the term of any lawful collective bargaining agreement between a public employer and an employe representative. **This restriction shall not apply to that period of time covered by any collective bargaining agreement which exceeds three years**. For the purposes

8

of this section, extensions of agreements shall not affect the expiration date of the original agreement.

43 P.S. § 1101.605(7)(i) (emphasis added). Based on the holdings in *Whitaker Borough* and *Chambersburg Borough*, we agree with the Board's adoption of a three-year contract bar. Because the current contract was entered into in 2009, the contract bar expired in 2012. Thus, the Petition was properly filed in 2014. Finding no "bad faith, fraud, capricious action or abuse of power" on the Board's behalf, and giving the Board the "measure of deference" to which it is entitled, we affirm the Board's Order of Decertification. *Ass'n of Pa. State Coll. & Univ. Faculties,* 8 A.3d at 304-05.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kaolin Workers Union,               :
               Petitioner     :
       v.                    :
                                 :
Pennsylvania Labor Relations Board,  :    No. 1433 C.D. 2015
               Respondent   :

## O R D E R

AND NOW, this 15th day of June, 2016, the Pennsylvania Labor Relations Board's July 21, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge