753 A.2d 803

**UPPER MAKEFIELD TOWNSHIP, Appellee,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1999.

Decided June 20, 2000.

114

James L. Crawford, Harrisburg, for Pa. Labor Relations Bd.

Gary M. Lightman, Sean T. Welby, Harrisburg, for Amicus-Makefield Tp. Police Ass'n.

Stephen B. Harris, Warrington, for Upper Makefield Tp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

We granted appeal in this matter in order to resolve the issue of whether Act 111 [1] mandates the binding arbitration of

---

[1]. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 conferred the right to collective bargaining on police and

grievances where the grievance procedure set forth in the parties' collective bargaining agreement (CBA) does not require arbitration. For the reasons that follow, we now affirm the order of the Commonwealth Court.

The facts of this matter are not in dispute. Officer Matthew Schrum was hired by Upper Makefield Township (Township) as a full-time police officer in August 1991. He was placed on a one-year probationary status. On July 15, 1992, the Township terminated Officer Schrum's employment.

Thereafter, the Upper Makefield Police Association (Association) filed a grievance on Officer Schrum's behalf, demanding arbitration. After the Township refused to arbitrate, the Association filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board (PLRB). The PLRB ultimately ordered the Township to arbitrate the grievance. The arbitrator issued an order on June 2, 1994, in which he refused to reach the merits of the matter, finding that the parties had not exhausted the four-step grievance procedure listed in the 1990–1992 CBA. This four-step grievance procedure required the complaining officer to bring his grievance first to his immediate ranking officer. If he didn't gain the relief he wanted at this first level, the grieving officer was required to pursue his grievance with increasingly senior officials, with the fourth and final step being an appeal to the Township Board of Supervisors (Board). The CBA grievance procedure did not provide for grievance arbitration.

The parties proceeded through all four steps of the CBA grievance procedure, with the Board ultimately denying the grievance. On December 21, 1995, the Association made a demand to arbitrate this matter. The Township refused.

On January 3, 1996, the Association filed a second charge of unfair labor practices over the Township's refusal to arbitrate. The PLRB found in favor of the Association, on the basis that

firefighters but denied them the right to strike because of the crucial services they perform. Act 111 includes a mandate to employers to engage in binding interest arbitration pursuant to the procedures specified therein. *Township of Moon v. Police Officers of the Township of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985).

our Court, as well as the Commonwealth Court, has recognized that Act 111 mandates binding arbitration of all grievances arising under collective bargaining agreements negotiated pursuant to Act 111. Thus, the PLRB concluded that the Township's refusal to arbitrate constituted an unfair labor practice and ordered the Township to make an offer to proceed to grievance arbitration[2] over the discharge of Officer Schrum.

The Township then appealed to the Commonwealth Court, which found that Act 111 contains no specific directive requiring grievances to proceed to arbitration and that there was no controlling case law on the issue. The Commonwealth Court therefore concluded that Act 111 does not compel a public employer to proceed to arbitration, and thus reversed the order of the PLRB.

The PLRB filed a Petition for Allowance of Appeal. We granted allocatur and this appeal followed. Initially we note that, as the issue before us is whether the Commonwealth Court erred as a matter of law, our scope of review is plenary, *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

Since Officer Schrum was a probationary employee at the time of his dismissal, we find that we need not reach a decision as to whether Act 111 compels the Township to proceed to arbitration or whether the grievance process bargained for and agreed to in the parties' CBA controls the final disposition of the dispute. Rather, we find that a probationary police officer such as Officer Schrum is not entitled to appeal his dismissal.

The very notion of probationary employment sets those employees apart from the others, signaling that they are new, newly transferred or newly promoted and that they must

---

**2.** "Grievance arbitration" is arbitration that settles disputes between the employer and an employee over the interpretation of a CBA. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt),* 540 Pa. 66, 656 A.2d 83, 85 n. 2 (1995). "Interest arbitration" refers to the "arbitration which occurs when the employer and employee are unable to agree on the terms of a collective bargaining agreement." *Id.*

prove themselves in the new position before being considered permanently employed therein. ·*See* BLACK'S LAW DICTIONARY 1202 (6ᵗʰ ed.1990); WEBSTERS THIRD NEW INTERNATIONAL DICTIONARY 1806 (1993). Implicit in the term "probationary" is that the employee is being tested or evaluated on the job. The time limit signals that the evaluation period will not last forever before a decision is made pursuant to which the employee will either be retained and thereby vested with the full rights and responsibilities of the non-probationary employee or will be terminated, having not completed the probationary period satisfactorily. As this creates a strictly "at will" relationship between the employer and employee during the probationary period, a probationary employee is not entitled to register a grievance should he or she not be retained past the probationary period.

■ This is what distinguishes those police and firemen who come within the ambit of Act 111 protections and those who do not. Those officers covered by the umbrella of Act 111 have passed their probationary period satisfactorily and assume a status protected by the right to bargain collectively and to have their grievances heard. Unless the terms of an officer's probationary period specifically grant him avenues of redress, the relationship is strictly at will and terminable by either side for the duration of the probationary period.

■ Here, there is nothing in the CBA contract between the Township and its non-probationary police that would refute the at-will status of probationary officers. That being the case, and as the language of Act 111 does not explicitly define the police and fire fighters it was enacted to protect to include · probationary employees, we look to evidence of legislative intent to either include or segregate such officers from the rest of the force. Article IX of the General Municipal Law (Police Tenure Act)[3] addresses the Removal of Policemen in Certain Boroughs and Townships.[4]

3. Act of June 15, 1951, P.L. 586 Section 1, et seq., 53 P.S. § 811–815.

4. Section 811 of the Police Tenure Act defines the townships and boroughs to which the Act applies. Upper Makefield, a Township of the Second Class, falls within the § 811 definition.

The Police Tenure Act explicitly excludes probationary officers from the constraints placed on the employer regarding the removal of officers. Specifically, the Police Tenure Act provides in pertinent part:

### § 812. Removals

No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, **with the exception of policemen appointed for a probationary period of one year or less,** shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall receive an honorable discharge from service; (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constituted a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. . . .

53 P.S. § 812 (footnotes omitted)(emphasis added).

■■■■ Section 812 of the Police Tenure Act thus sets forth the only circumstances under which a regular full time police officer of a township such as Upper Makefield may be removed from office while *specifically excluding probationary officers of one year or less from such protection. See also Township of Bensalem v. Moore,* 152 Pa.Cmwlth. 540, 620 A.2d 76 (1993)(protections of Police Tenure Act do not extend to probationary police officers employed for one year or less). The exclusionary language means that probationary officers of one year or less may be terminated *not just* for those reasons but for any other reason. In other words, a probationary officer in Upper Makefield Township, such as Officer Schrum, is an employee at will and may be removed without cause pursuant to § 812.

Such distinction of probationary policemen comports with this Court's position in *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190 (1997) where we stated, "[a] govern-

mental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute." *Id.* at 6, 693 A.2d at 192. Here, Officer Schrum can point neither to any contract nor to statutory language that confers such personal or property right on him before he satisfactorily completes the probationary period.

Since Officer Schrum was not yet entitled to the protections afforded a permanent Upper Makefield police officer, this Court need not reach the merits of the issue on appeal—whether grievance arbitration is mandated by Act 111 even where there is a bargained-for grievance procedure in place under the CBA. As a probationary police officer, Schrum had no right to appeal his dismissal either under Act 111 or under the terms of the CBA. We therefore affirm the order of the Commonwealth Court[5] dismissing the charge of unfair labor practice against the Township and thereby uphold the Township's termination of Officer Schrum.

---

**5.** It is well settled that this Court may affirm the decision of the immediate lower court on any basis, without regard to the basis on which the court below relied. *Shearer v. Naftzinger,* 560 Pa. 634, 747 A.2d 859, 861 (2000).