759 A.2d 913

**TOWNSHIP OF SUGARLOAF, Appellee,**

v.

**Anthony R. BOWLING, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1999.

Decided Oct. 19, 2000.

Gary M. Lightman, Harrisburg, for Anthony R. Bowling.

James A. Schneider, Hazleton, for Tp. of Sugarloaf.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

■ We granted this matter in order to determine whether the trial court or the arbitrator has the initial jurisdiction to determine the arbitraribility of a grievance brought by a police officer. We now hold that the issue of whether a particular matter is arbitrable pursuant to Act 111 [1] is an issue which must be submitted first to the arbitrator, and that it is error to bring the issue of jurisdiction first to the trial court. We therefore affirm the Commonwealth Court's vacatur of the trial court's order, albeit on different grounds.

On July 1, 1995, Anthony R. Bowling ("Officer Bowling") was hired by the Township of Sugarloaf ("Township") as a part-time, probationary police officer. No formal contract of hire was entered into by Officer Bowling and the Township; there was also apparently no mutual understanding regarding the term of Officer Bowling's probationary period. On August 14, 1996, approximately thirteen months after Office Bowling was first hired, the Township communicated that it intended to extend Officer Bowling's probationary period, ostensibly for the purpose of giving the Township additional time to review Officer Bowling's work performance. On December 4, 1996, the Township informed Officer Bowling that his probationary period had terminated and that the Township would not hire him as a full-time police officer.

On December 6, 1996, Officer Bowling informed the Township that he desired to proceed to arbitration over his termination. The Township refused to proceed to arbitration. The Township took the position that Officer Bowling was not entitled to have his grievance arbitrated since he, as a probationary officer, was not covered by the collective bargaining agreement.

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 applies to police and firefighting personnel only.

Undaunted, Officer Bowling requested that the American Arbitration Association ("AAA") appoint an arbitrator to hear his grievance; in making this request of the AAA, Officer Bowling was following the procedure set forth in the collective bargaining agreement concerning the appointment of arbitrators. Per Officer Bowling's request, AAA selected an arbitrator and a hearing was scheduled.

The Township filed a complaint in equity seeking injunctive relief, requesting that the trial court stay the arbitration proceedings. The trial court determined that as a probationary employee, Officer Bowling was not covered by the collective bargaining agreement and was not entitled to proceed to arbitration over his grievance. The trial court also rejected Officer Bowling's claim that the issue of whether this matter was arbitrable was to be first decided by the arbitrator, and not by the trial court. The trial court concluded that notwithstanding this court's decision in *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 499 Pa. 62, 451 A.2d 671 (1982), it had jurisdiction over this matter because the "present case revolves around the intent of the parties under an employment contract. Contractual intent is clearly addressable by the courts." Tr. ct. slip op. at 5. The trial court granted the Township relief, staying the arbitration proceedings.

Officer Bowling appealed to the Commonwealth Court. The Commonwealth Court held that the trial court had failed to address the issue of whether Officer Bowling was a member of the Township's police force. It therefore vacated the trial court's order and remanded the matter to the trial court for a determination of this question. The Commonwealth Court then went beyond the jurisdictional issue which was before it and addressed the substantive issue which was not. The court expressed the opinion that "absent *specific* language in the collective bargaining agreement itself to [the effect that a probationary officer is covered under a collective bargaining agreement], a probationary officer is *not* subject to the protections of a collective bargaining agreement." Commw. Ct. slip

op. at 6 (emphases in the original). In support of this position on probationary police officers, the Commonwealth Court relied on the fact that there was no guidance from the case law on this issue and that "basic logic" support the court's conclusion. Commw. Ct. slip op. at 6 n. 6.[2]

Officer Bowling then filed a petition for allowance of appeal, and this court granted allocatur.

The question with which we are confronted is whether the arbitrator or the trial court has initial jurisdiction over the issue of arbitrability of this grievance dispute.[3] To answer this question, we turn first to Act 111, the act which controls the manner in which grievances between police officers and their public employers are resolved.

■ Act 111, which applies to police officers and firefighters only, was promulgated by the legislature after years of unrest in the firefighting and police forces. The central goal of the legislature in crafting this act was to return these critical labor forces to a state of stability. To ensure that resolution of labor disputes was both swift and certain, involvement by the judiciary in the resolution of Act 111 disputes is most severely circumscribed. As detailed more fully in our decision in *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83, 85 (1995), the court's review of an Act 111 arbitration award is in the nature of narrow certiorari.

Act 111 does not specifically state whether issues of arbitrability are to be first determined by the arbitrator or the court

**2.** As the only issue before the court was a jurisdictional one, the Commonwealth Court's pronouncement on whether a probationary police officer is encompassed within a collective bargaining agreement was a questionable foray into expressing *obiter dicta*. Since the Commonwealth Court's discussion of the substantive issue is of no moment, we shall not examine it in this opinion.

**3.** In reviewing this matter, our scope of review is plenary, as it is with any question of law. *Phillips v. A-Best Products Co.*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). Furthermore, as this matter concerns solely a question of law, our standard of review is limited to determining whether the Commonwealth Court erred as a matter of law. *See Stone and Edwards Ins. Agency, Inc. v. Com., Dept. of Ins.*, 538 Pa. 276, 648 A.2d 304, 307 n. 2 (1994).

system. Yet, a holding which would declare that such issues are to be decided first by a judge would set itself in opposition to the intrinsic purpose of the act; allowing such judicial interference in an area of labor law which the legislature has strived mightily to limit the judiciary's involvement would be highly improper. We therefore determine that it is most consistent with the dictates of Act 111 to hold that the arbitrator, and not the trial court, has jurisdiction to make the initial determination of whether an issue is arbitrable.

We also note that such a holding is in accord with this court's pronouncements in regard to answering this identical issue in the context of a dispute arising under the Public Employe Relations Act, 43 P.S. §§ 1101.101–1101.2301 ("PERA").[4] In *Bald Eagle Area School District, supra,* we held that it was the arbitrator who was to first determine the arbitrability of a dispute arising under PERA. We declared that it was "folly [to allow] a full preliminary bout in the courts over the issue of an arbitrator's jurisdiction. . . ." 451 A.2d at 673. We stated that to permit such preliminary wrangling in the courts over the issue of whether a matter was arbitrable would permit these labor disputes to become mired down in litigation; the *Bald Eagle* court declared that such a scenario was to be avoided in light of the fact that the legislature demanded that these disputes be settled via arbitration rather than litigation.

The abhorrence expressed in *Bald Eagle* for allowing judicial interference in a process which the legislature dictated was to be left to the arbitrators is even more appropriate in the context of an Act 111 matter. While the public employees covered by PERA obviously perform useful services for the citizens of this Commonwealth, their functions are not as critical to the continued stability of a peaceful society as are those performed by police and firefighting personnel. As

4. While PERA and Act 111 are separate, distinct acts, we have stated that where Act 111 does not give explicit direction on an issue, we may examine how the same issue arising under PERA is handled in order to aid us in our determination. *See Whitaker Borough v. Pennsylvania Labor Relations Board,* 556 Pa. 559, 729 A.2d 1109 (1999).

sagaciously recognized by the legislature, disputes involving police and firefighting personnel are to be resolved swiftly in order to prevent labor unrest, and arbitration is the nimble mechanism which can meet this timeliness challenge. Allowing judicial involvement at the initial stage of this process, thereby thwarting the legislature's intent to preclude judicial involvement in this sensitive area of labor law, would be most unwise.[5]

The Township and the courts below, however, reason that it is the trial court which is to make the initial determina-

---

5. Respectfully, the dissent authored by Mr. Justice Nigro misses the mark. The primary focus of that dissent is on the substantive issue of whether a probationary employee may invoke the grievance arbitration process, an issue this court recently addressed in *Upper Makefield Township v. Pennsylvania Labor Relations Board*, 562 Pa. 113, 753 A.2d 803, 2000 Pa. Lexis 1541 (2000). However, that issue is not before our court in this appeal. Rather, the only issue before us is whether at the outset, a trial court or an arbitrator has the initial jurisdiction to determine arbitrability. This threshold issue of what entity resolves the issue of arbitrability transcends *Upper Makefield* and any specific reason for or against arbitrability. It impacts the framework of labor dispute resolution proceedings.

To the extent that Mr. Justice Nigro's dissent touches upon this jurisdictional issue, and asserts that it is for the trial court to make this initial determination, it takes a position that is contrary to the clear legislative policy discussed above which favors the resolution of labor disputes by non-judicial means. Moreover, of import is the practical effect of imposing a layer of court intervention on the process. Our trial courts would be required to expend their already taxed resources on their newfound role as gatekeeper to the labor dispute resolution process; the parties would lose the benefit of an informal, speedy and inexpensive means of dispute resolution. Furthermore, our judges would be forced to grapple with the interpretation of labor agreements to discern the intent of the parties. Even with respect to the limited issue of an employee's probationary status, there will be instances in which the collective bargaining agreement must be reviewed to determine whether language therein refutes the at-will status of a probationary employee and grants such employee access to the agreement's grievance resolution procedure. *Upper Makefield*, 753 A.2d 803, 806, 2000 Pa. Lexis 1541, *6. Yet, the legislature has eschewed the view that the function of interpretation of labor agreements is a task for the judiciary and has evinced an intent to limit judicial involvement. *See Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt), supra.* Finally, as explained above in detail, the view espoused by this dissenting opinion is in direct opposition to this court's prior decision in *Bald Eagle Area School District* which recognized that

tion of whether a dispute is arbitrable. In support of this position, they rely upon 42 Pa.C.S. § 7304, a provision found in the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7362 ("UAA"). We must reject this position. While 42 Pa.C.S. § 7304 does indeed allow a trial court to make the initial determination about the arbitrability of a dispute, the UAA specifically states that its provisions may apply only where they are "consistent with any statute regulating labor and management relations." 42 Pa.C.S. § 7302(b). As we have determined that pursuant to Act 111, the question of whether a matter is arbitrable must first be determined by the arbitrator, then any provision in the UAA which would vest the trial court with the authority to determine this issue is patently inconsistent and inapplicable.

Therefore, we affirm, albeit on different grounds, that portion of the Commonwealth Court's order vacating the order of the trial court. Furthermore, we vacate that portion of the Commonwealth Court's order which remanded this matter to the trial court for further proceedings. Jurisdiction is relinquished.

Justice ZAPPALA files a dissenting opinion.

ZAPPALA, Justice, dissenting.

The test of whether a court has jurisdiction over a particular controversy depends upon 'the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry,* not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case.'* *Commonwealth of Pennsylvania, Department of Public Welfare v. Court of Common Pleas of Philadelphia County,* 506 Pa. 410, 485 A.2d 755, 758 (1984) (emphasis supplied; citations omitted.); *See also Flynn v. Casa Di Bertacchi Corporation,* 449 Pa.Super. 606, 674 A.2d 1099, 1105 (1996) (The term 'jurisdiction' relates to the compe-

arbitrability is a determination best made by an arbitrator in the first instance.

tency of the individual court, administrative body, or other tribunal to determine controversies of the general class to which a particular case belongs.)

In *Studio Theaters, Inc. v. City of Washington,* 418 Pa. 73, 209 A.2d 802 (1965), we quoted extensively from *Zerbe Township School District v. Thomas,* 353 Pa. 162, 44 A.2d 566 (1945), in addressing the issue of whether a court has the authority to determine its own jurisdiction.

> In *Zerbe Township School District v. Thomas,* ... we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry,* not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case. ...*

209 A.2d at 805–805 (emphasis supplied).

Although a court may have no jurisdiction over a particular subject matter, it may have jurisdiction to determine the question of its own jurisdiction. *Gaorden v. Cutler,* 324 Pa.Super. 35, 471 A.2d 449, 452 (1983), citing *Commonwealth ex rel. Cook v. Cook,* 303 Pa.Super. 61, 449 A.2d 577, 581 (1982).

The majority concludes in this case that the issue of whether a particular matter is arbitrable pursuant to Act 111 is an issue which must be submitted first to the arbitrator, and that it is error to bring the issue of jurisdiction first to the trial court. I dissent as this holding is contrary to the well-settled principle that a court has jurisdiction to determine the question of its own jurisdiction. In this case, the ultimate resolu-

tion of the issue of whether the trial court has jurisdiction will rest on the employment status of Officer Bowling. At this stage of the proceedings, when the issue of jurisdiction has not been resolved, the trial court is not deprived of its authority to address that issue. I would remand this matter to the trial court for further proceedings.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

I respectfully dissent as I believe that the question of whether appellant Bowling is a police officer protected by Act 111 and/or the collective bargaining agreement, as distinguished from a probationary police officer appointed for a period of one year or less and therefore not entitled to such protection, is a threshold question of fact to be determined by a trial court. *See* Police Tenure Act, 53 P.S. § 812; *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000). Thus, before the mandates of Act 111 arbitration come into play, the first order of business must be to establish whether an employee such as Officer Bowling may, under the circumstances, be deemed a permanent police officer.

Officer Bowling was initially hired as a probationary officer for one year. Through that one-year probationary period, his termination fell solely under the ambit of the Police Tenure Act which provides that policemen appointed for a probationary period of one year or less are employees at will and not afforded any of the protections reserved for non-probationary officers. 53 P.S. § 812.[1] Thus, as a probationary officer,

1. The Police Tenure Act, applicable to a Township of the Second Class such as Sugarloaf, provides in pertinent part:

   § 812. Removals
   No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, **with the exception of policemen appointed for a probationary period of one year or less,** shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which case the person shall

Bowling does not have access to the grievance procedure of the permanent officers.

Clearly, had Officer Bowling been terminated during his initial one-year probation, § 812 would control. Here, however, Officer Bowling's probationary term was extended beyond the initial one-year period. The question, therefore, is whether, at some point between the expiration of the initial one-year probationary period and his termination, Officer Bowling was no longer considered probationary and therefore entitled to the protection of the Police Tenure Act, Act 111, or the CBA. Until this question is decided—and decided in favor of Bowling—no pertinent contract or legislation permits, let alone compels, these parties to arbitrate.

The task for the trial court is, then, to decide whether an employee, who at the time of hiring was explicitly a policeman appointed for a probationary period of one year or less, retains that status when he has worked beyond one year. I would therefore affirm the Commonwealth Court and remand to the trial court for that threshold determination. Only pursuant to a finding that Officer Bowling was no longer a probationary employee pursuant to § 812, would this matter then fall under the ambit of an arbitrator.

receive an honorable discharge from service; (2) neglect for violation of any official duty; (3) violating of any law which provides that such violation constituted a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty. . . .
53 P.S. § 812 (footnotes omitted)(emphasis added).