## SCHUYLKILL HAVEN BOROUGH

### v.

## SCHUYLKILL HAVEN POLICE OFFICERS ASSOCIATION, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 8, 2006.

Decided Dec. 22, 2006.

---

Richardson Todd Eagen, Harrisburg, for appellant.

Scott E. Blissman, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

Schuylkill Haven Police Officers Association (Union) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court) vacating in part an "Act 111"[2] interest arbitration award (Award) providing the terms and conditions of employment with Schuylkill Haven Borough (Employer) for 2005 through 2007.

The Union and Employer entered into a collective bargaining agreement (CBA) effective January 1, 2002, through December 31, 2004. Upon expiration of the CBA,

---

1. This case was reassigned to the author on November 8, 2006.

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

the Union and Employer reached an impasse with respect to the adoption of a successor CBA and, in accordance with Act 111, a Board of Arbitrators was appointed.[3] At the hearing, Employer alleged, among other things, that provisions in the expired CBA regarding mandatory employer contributions to an employee deferred compensation plan, limitations on the amount of employee pension contributions and a no-layoff clause were either not authorized by The Borough Code[4] and/or illegal and/or infringed on Employer's managerial rights. Effectively continuing the challenged provisions, the Board of Arbitrators, by a 2–1 vote, issued an Award governing the terms and conditions of employment between January 1, 2005, and December 31, 2007, providing:

> 5. *Deferred Compensation*—If contributions to a deferred compensation plan are determined to be illegal, they are to be discontinued.[5]

> \* \* \*

> 7. *No Layoff*—There shall be no layoffs of currently full-time Officers during the term of this Agreement.
> 8. *Reopener*—In 2005, for effect in 2006, there will be a reopener in the contract solely to address issues of officer pension contributions and part-timer participation in overtime opportunities.

Because Paragraph 9 of the Award left in place "all existing benefits contained in previous awards and written agreements not modified by this award shall remain as is," the net effect was that mandatory Employer contributions and limitations on employee contributions were carried over from the expired CBA.

▮▮▮ Contending again that those provisions were illegal or in derogation of its management rights, Employer appealed those provisions of the Award to the trial court. Agreeing with Employer, the trial court vacated the challenged provisions reasoning: while Employer was allowed to create a deferred compensation accounts plan under Section 8.1 of the Fiscal Code, Act of March 30, 1811, P.L. 145, *as amended*, 72 P.S. § 4521.1, nowhere in that Act or the Borough Code was there any authority that allowed a borough to match those contributions; that the no-layoff provision impermissibly infringed upon Employer's inherent managerial right to determine the number of police officers required to police the Borough; and by declining to address the issue of officer pension contributions contained in the expired CBA, the Award continued an

---

3. "Section 4 of Act 111, 43 P.S. § 217.4, states that either party to a dispute may request the appointment of a board of arbitration if the collective bargaining process reaches an impasse." *Borough of Morrisville v. Morrisville Borough Police Benevolent Association*, 756 A.2d 709, 710 n. 2 (Pa.Cmwlth. 2000).

4. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

5. Article 13.7 of the expired CBA offered the Union voluntary participation in an additional pension plan, stating:

> *401(K) Pension Plan.* In addition to wages set forth above, [Employer] will contribute to each Full Time Police Officer who is a participant in the current voluntary 401(k) styled pension plan (which is presently through the Pennsylvania State Association of Boroughs) the following amounts on the following dates.
>   (a) [Employer] will increase to four percent (4%) for 2002, five percent (5%) for 2003, and six percent (6%) for 2004. The percentage contribution by [Employer] shall be the aforementioned percentages of the officer's gross wages including Borough related overtime (specifically excluding drug task force overtime).... The aforementioned [Employer] contributions will match the officer's contribution up to the aforementioned percentages for the appropriate year.

illegal carry-over provision from the expired CBA because the amount of police officer pension contributions were within Employer's exclusive managerial prerogative and were controlled by the express language of the Police Pension Fund Act (Act 600), Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. § 767, as modified by Act 30 of 2002. The Union then filed this appeal.[6]

## A.

■ The Union contends that the trial court erred in vacating that portion of the Award requiring Employer to make mandatory contributions to an employee deferred compensation plan because it had no authority under the Borough Code to voluntarily contribute to an employee's deferred compensation plan. While recognizing that an arbitration award can only mandate a benefit that a public employer could voluntarily grant by law, the Union argues that Employer had the authority to match contributions to a deferred compensation plan under Section 8.1(a) of the Fiscal Code[7] and Sections 1006(6)[8] and 1125[9] of the Borough Code.[10]

Section 8.1(a) of the Fiscal Code allows public employers to establish deferred

---

(Reproduced Record at 51a.)

6. "When reviewing an arbitration award issued under the authority of Act 111, this Court's standard of review is limited certiorari, which permits an appellate court to consider questions concerning: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) the deprivation of constitutional rights. *City of Butler v. Fraternal Order of Police, Lodge # 32,* 780 A.2d 847 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 568 Pa. 620, 792 A.2d 1255 (2001). An arbitrator: (1) may not order the employer to perform an illegal act; (2) is limited to requiring that a public employer do that which it could do voluntarily; and (3) must craft an award that only encompasses the terms and conditions of employment. Id. An error of law alone is not sufficient to reverse an award under this narrow standard of review. Id." *City of Erie v. International Association of Firefighters Local 293,* 836 A.2d 1047, 1050 n. 4 (Pa.Cmwlth.2003).

7. Section 8.1(a) of the Fiscal Code, 72 P.S. § 4521.1(a), provides:

The governing body of any ... political subdivision may, by contract, agree with any employe **to defer, a portion of that employe's compensation** and may subsequently, with the consent of the employe, purchase government bonds or purchase life insurance contracts, annuity contracts, or mutual fund shares from any life underwriter or mutual fund salesman duly licensed by the State who represents any

company licensed to contract such business in this State or make deposits on behalf of the employe in savings accounts in institutions authorized to accept such deposits.

8. Section 1006(6) of the Borough Code, 53 P.S. § 46006(6), specifically authorizes the Borough's council "[t]o fix the compensation of all of the borough officers, appointees and employes."

9. Section 1125 of the Borough Code, 53 P.S. § 46125, provides "[t]he borough police ... shall receive such compensation as shall be fixed by borough council."

10. By merely providing in the award that if Employer's deferred compensation plan contributions are illegal they are to be discontinued, the Board of Arbitration shirked its duty by not addressing the propriety of this provision and correcting it if necessary. As we stated in *Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee,* 767 A.2d 596, 600–01 (Pa.Cmwlth. 2001):

In [*Lee v. Municipality of Bethel Park,* 722 A.2d 1165 (Pa.Cmwlth.1999)], this Court followed the decision in [*Borough of Dormont v. Dormont Borough Police Department,* 654 A.2d 69 (Pa.Cmwlth.1995),] and held that where there is an interest arbitration award, an employer may subsequently assert the illegality of a condition or provision because it did not have an opportunity to do so during the bargaining process. Moreover, a board of arbitrators exceeds its power when an award requires a munici-

compensation plans so that governmental employees can take advantage of tax incentives contained in the Internal Revenue Code. Absent this provision, public employers could not establish and manage such plans because the public employer would be undertaking an activity for the private benefit of its employees and not for any governmental purpose. Recognizing that a deferred compensation plan "defers" compensation presently due, is a tax plan device and participation depends on the financial and personal circumstances of each employee, Section 8.1(a) of the Fiscal Code only permits voluntary participation by employees. Correspondingly, because this provision was enacted to enable employees to take advantage of tax benefits available to private sector employees, nothing in that provision envisions or authorizes a public employer to match contributions that employees made to the deferred compensation plan.

■ Similarly, nothing in Sections 1006(6) and 1125 of the Borough Code vests in an employer the authority to match contributions; all that they do is authorize boroughs to "fix" compensation, i.e., what employees are paid for their services. Matching contributions are anything but "fixed" compensation because the amount "fixed" is not determined by the governmental entity, but by the employees who determine whether they want to defer any compensation and in what amount. In addition, requiring Employer to contribute to "the current voluntary 401(k) styled pension plan (which is presently through the Pennsylvania State Association of Boroughs) created a separate pension plan where only one plan is authorized by the Borough Code as well as Act 600."[11]

Because Employer had no legal authority to match employee contributions even if it wanted to, the trial court, when vacating Paragraph 5 of the Award, properly found that the Board of Arbitrators was acting illegally by requiring Employer to match employees' contributions.

**B.**

■ Regarding the provision providing that no employed full-time police officer may be laid off, the Union contends that the trial court erred in vacating that provision because it violated an inherent management right. It contends that a no lay-off issue was properly raised before the Board of Arbitrators, and it was within their jurisdiction and authority to decide because it affected terms and conditions of the employees' employment.

pality to take an action that is prohibited by a statutory law.

11. Sections 1(a)(1) and (2) of Act 600, 53 P.S. § 767(a)(1) and (2), provide, in pertinent part:
(a)(1) Each borough ... of this Commonwealth maintaining a police force of three or more full-time members ... shall ... establish, by ordinance or resolution, a police pension fund or pension annuity to be maintained by a charge against each member of the police force, by annual appropriations made by the borough ..., by payments made by the State Treasurer to the municipal treasurer from the moneys received from taxes paid upon premiums by foreign casualty insurance companies ... and by gifts, grants, devises or bequests granted to the pension fund....
(2) Such fund shall be under the direction of the governing body of the borough ... and applied under such regulations as such governing body, by ordinance or resolution, may prescribe for the benefit of such members of the police force....
Section 5(c) of Act 600, 53 P.S. § 771(c), provides:
Monthly pension or retirement benefits other than length of service increments shall be computed at one-half the monthly average salary of such member during not more than the last sixty nor less than the last thirty-six months of employment.

■ Where a managerial policy concern substantially outweighs any impact the issue will have on employees, the subject will be deemed a managerial prerogative and non-bargainable. *Ellwood City Police Wage and Policy Unit v. Pennsylvania Labor Relations Board,* 731 A.2d 670 (Pa. Cmwlth.1999) (citing *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 722 A.2d 1118, 1121 (Pa.Cmwlth.1998)). One area that has been consistently recognized as an inherent management prerogative is the total number of police officers or firemen that a municipality desires to employ. *City of Philadelphia v. Pennsylvania Labor Relations Board,* 138 Pa.Cmwlth. 113, 588 A.2d 67 (1991); *International Association of Fire Fighters, Local 669 v. City of Scranton,* 59 Pa.Cmwlth. 235, 429 A.2d 779 (1981). We noted in *International Association of Fire Fighters, Local 669,* that:

> The courts that have dealt with this issue have drawn a *very* fine line in distinguishing between the total number of persons on the force (not arbitrable), and the number of persons on duty at a station, or assigned to a piece of equipment, or to be deployed to a fire (all arbitrable because they are rationally related to the safety of the firefighters). However, this Court finds merit in that distinction, because the result still leaves in the municipality the ultimate decision concerning what level of fire protection it wishes, or can afford, to provide to the citizens. If it finds that the arbitrable situations cause an imbalance in certain areas of the force, it retains the authority to decide whether to hire more employees, close stations, revamp the force, or take some other managerial action. Since the method of resolving the imbalance may have far-reaching political and economic implications, especially if taxes must be raised, it should remain within the purview of those who were elected and/or appointed to make such decisions. (Emphasis in original.)

*Id.* at 781.

Because the number of police officers that Employer desired to employ was a management prerogative and not subject to bargaining, the trial court properly vacated Paragraph 7 from the Award as the Board of Arbitrators exceeded its authority by providing that any current employee may not be laid off for the term of the award.

### C.

■ Paragraph 8 of the Award provided, "[i]n 2005, for effect in 2006, there will be a reopener in the contract solely to address issues of officer pension contributions," and Paragraph 9 provided, "[a]ll existing benefits contained in previous awards and written agreements not modified by this award shall remain as is." The net effect was that the Award carried over Article 12.2(d) of the expired CBA,[12] limiting the maximum employee contribution to 5% percent of wages. The trial court vacated that paragraph from the Award because it infringed on an exclusive management prerogative given to Employ-

---

**12.** Article 12.2(d) of the expired CBA provided:

> In the event that the sum of 12.1(a) and (b) above does not equal or exceed said Total Contribution Due for the applicable Plan Year, the contribution of Plan Members for the applicable Plan Year shall be increased to that percentage of W–2 wages and salaries, **but in no event greater than the maximum five (5%) percent limit as now established by the Ordinance,** which is necessary to pay the Plan the difference between the Total Contribution Due as determined by the actuary, and the amount received from [the Pennsylvania General Municipal Pension System State Aid Program] attributable to Police Officers, as described in 12.2(b) above. (Emphasis added.)

er by Section 6(a) of Act 600, 53 P.S. § 772(a), to set the level of contributions police officers have to make to their pension fund.[13] The Union contends that the trial court erred because the Award did not impermissibly defer resolution of police officer compensation because it merely continued provisions that were the permissive subject of collective bargaining, not inherent management rights under Act 600.[14]

Recently, in the *Borough of Jefferson Hills v. Jefferson Hills Police Department Wage and Policy Committee*, 904 A.2d 61 (Pa.Cmwlth.2006), we addressed the effect of Act 30's amendment of Act 600 on when employee contributions to the police pension fund could be eliminated or reduced, *albeit* in the context of whether Act 30 applied retroactively to a collective bargaining agreement entered before its enactment. In holding that it did not, we explained:

> Section 6(a) of Act 600, 53 P.S. § 772(a), provides that "[m]embers shall pay into the fund, monthly, an amount equal to not less than five per centum nor more than eight per centum of monthly compensation." [Before the amendment,] Section 6(c) of Act 600, 53 P.S. § 772(c), provided:

> *If an actuarial study shows that the condition of the police pension fund of any borough, town, township or regional police department is such that payments into the fund by members may be reduced below the minimum percentages hereinbefore prescribed, or eliminated, and that if such payments are reduced or eliminated contributions by the borough, town, township or regional police department will not be required to keep the fund actuarially sound,* the governing body of the borough, town, township or regional police department may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members. (Emphasis in original).

This language permitted a governing body to reduce or eliminate pension contributions by police officers only if the governing body would not thereafter be required to make contributions to keep the fund actuarially sound. Prior contributions were based upon the funding requirements of the plan. Officers had to contribute at least 5% of their salaries to meet actuarial funding requirements before the Borough would be required to

---

13. In *Swatara Township v. Swatara Township Police Department*, 164 Pa.Cmwlth. 378, 642 A.2d 660, 662 (1994) (quoting *In re Arbitration Between the Borough of Berwick and the Borough of Berwick Police Department*, 152 Pa.Cmwlth. 242, 618 A.2d 1185, 1188 (1992)), we stated:

> In cases where both Act 111 and Act 600 are applicable, we have held that the provisions of Act 600 limit the authority granted by Act 111 with respect to arbitration. In *[In re Arbitration Between] Borough of Berwick [and] Borough of Berwick Police Dep't*, 152 Pa.Commonwealth Ct. 242, 618 A.2d 1185 (1992), where arbitrators violated Act 600 by permitting police to retire after only twenty years of service, we stated that:

> [T]here must be excluded from the scope of the Act [Act 111] and necessarily outside of the definition of bargainable issues, any subject which would require the government employer to perform any duty or to take some action which is specifically or impliedly prohibited by this statutory law governing its affairs. Such subjects are, of course, equally beyond the scope of an arbitration award.

14. It should be noted that the Union did not challenge on appeal that portion of the trial court's finding in Paragraph 8 of the Award that authorized the return of pension contributions as illegal in violation of Sections 6(c) and 9 of Act 600, 53 P.S. §§ 772(c) and 775. Accordingly, that portion of the trial court's opinion is affirmed.

contribute to the plan. Thus, a request to eliminate or reduce officer pension contributions could not legally be granted if it resulted in the Borough being required to make contributions in order to keep the plan actuarially sound.

On April 17, 2002, Act 600 was amended by Act 30, effective immediately. Act 30 deleted the first part of Section 6(c) (as italicized above) to provide:

> The governing body of the borough, town, township or regional police department may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members. *Except as otherwise provided in this subsection, reduction or elimination of member contributions shall not permit the return of contributions or any interest or fund earnings to be made to members while actively employed as a police officer by any borough, town or township subject to this act.* [Where an agreement, collectively bargained or otherwise, arbitration award or court decision was agreed to, issued or rendered on or prior to February 23, 1994, which provided for a return of contributions, with or without interest, or fund earnings to members, a return of contributions, with or without interest, or fund earnings shall be made to members and any such return of contributions shall reduce or eliminate any entitlement to refunds pursuant to section 9. No borough ... making such return or member receiving such return shall be required to restore to the fund any such contributions, interest or fund earnings.]

*The passage of Act 30 eliminated the statutory requirement that a police officer contribute to the pension fund of which he or she is a member before municipal contributions are required to keep the fund actuarially sound. In other words, members of the fund will no longer be legally required to contribute to their own plan before the municipality is required to contribute. The parties can now reduce or eliminate officer contributions regardless of the actuarial status of the pension fund.* (Emphasis added.)

*Id.* at 63–64.

Employer contends that it has the sole discretion to decide whether police officer contributions should be reduced because Section 6(c) of Act 600, 53 P.S. § 772(c), provides only the "governing body of the borough ... may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members." However, notwithstanding such language, pension obligations have always been the subject of collective bargaining. *See, e.g., Pennsylvania State Troopers Association v. Pennsylvania State Employes' Retirement Board,* 677 A.2d 1329, 1330–31 (Pa. Cmwlth.1996). Consistent with that understanding, Section 6(c) of Act 600, in prohibiting the return of pension contributions, recognizes that pension contributions could be the subject of "an agreement, collectively bargained or otherwise, arbitration award." *See also Borough of Jefferson Hills,* 904 A.2d at 64. ("The **parties** can now reduce or eliminate officer contributions regardless of the actuarial status of the pension.") Because the subject matter carried over in Article 12.2(d) of the expired CBA was bargainable, and limiting the maximum employee contribution to 5% percent of wages was not illegal under Act 600 as amended by Act 30, that portion of the order vacating Paragraph 8 of the award is reversed and that Paragraph is reinstated.

Accordingly, that portion of the trial court's order vacating Paragraphs 5 and 7

of the Award is affirmed, and that portion of the order vacating Paragraph 8 of the Award is reversed.

## ORDER

AND NOW, this *22nd* day of *December*, 2006, the order of the Court of Common Pleas of Schuylkill County, dated November 30, 2005, at No. S–1145–2005, vacating Paragraphs 5 and 7 of the Board of Arbitrator's Award, dated April 12, 2005, at No. 14 L 360 00527, is affirmed, and that portion of the order vacating Paragraph 8 of the Board of Arbitrator's Award regarding payment of pension contributions is reversed.

## CONCURRING AND DISSENTING OPINION BY Senior Judge KELLEY.

I concur with the Majority's disposition of the first two allegations of error raised in this appeal. However, with respect to the Majority's disposition of the final claim raised, I respectfully dissent.

Paragraph 8 of the arbitrators' award provides, in pertinent part, that "[i]n 2005, for effect in 2006, there will be a reopener in the contract solely to address issue[] of officer pension contributions. . . ." (Reproduced Record) RR at 96a.[1] Paragraph 9 of the arbitrators' award provides, in pertinent part, that "[a]ll existing benefits contained in previous awards and written agreements not modified by this award shall remain as is. . . ." *Id.* Thus, by delaying the disposition of the pension contributions issue until the reopener to the following year, the award carried over the pension contribution provisions of the former CBA to the successor agreement for the initial year of the successor agreement. *Municipality of Monroeville v. Monroeville Police Department Wage Policy Committee*, 767 A.2d 596, 599 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 566 Pa. 672, 782 A.2d 551 (2001).

In addition, Section 6 of Act 600[2] provides, in pertinent part, that "[m]embers shall pay into the fund, monthly, an amount equal to not less than five per centum nor more than eight per centum of monthly compensation. . . ." 53 P.S. § 772(a). Section 6 also provides that "[t]he remainder of the needed annual contributions, as determined by the actuary, shall become the obligation of the borough . . . and shall be paid by it to the pension fund by annual appropriations." 53 P.S. § 772(b). Section 6 further provides that:

> [T]he governing body of the borough . . . may, on an annual basis, by ordinance or resolution, reduce or eliminate payments into the fund by members. *Except as otherwise provided in this subsection, reduction or elimination of member contributions shall not permit the return of contributions or any interest or fund earnings to be made to members while actively employed as a police officer by any borough . . . subject to this act. . . .*

53 P.S. § 772(c) (emphasis added).[3]

However, Section 12.5 of the CBA provides:

> [W]here an agreement, collectively bargained or otherwise, arbitration award or court decision was agreed to, issued or rendered on or prior to February 23, 1994, which provided for a return of contributions, with or without interest, or fund earnings to members, a return of contributions, with or without interest, or fund earnings shall be made to members and any

---

1. In this appeal, there is no allegation of error with respect to the portion of Paragraph 8 of the award concerning a reopener on the issue of "part-timer participation in overtime opportunities". *See Id.*

2. Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §§ 767–778.

3. The caveat provided for in Section 6 states:

Effective January 1, 1990, to the extent that contributions made by Police Officers to the Police Pension Fund are in excess of the necessary funding, the Borough shall refund contributions made by Officers with appropriate interest. The Fraternal Order of Police and /or the Borough of Schuylkill Haven Police Department shall indemnify and save the Borough harmless against all claims, demands, suits or other forms of liability that shall arise out of or by reason of action taken or not taken by the Borough at the request of the Fraternal Order of Police and/or Borough of Schuylkill Haven Police Department for the purpose of complying with this clause. Further, this provision of this clause applies only to Police Officers in the employ of the Borough on or after January 1, 1990. This provision is not applicable to any Police Officer who may have previously been employed by the Borough on or before December 31, 1989.

RR at 44a. Thus, the foregoing provisions of the CBA conflict with the express provisions of Sections 6 and 9 of Act 600, 53 P.S. §§ 772(c) and 775, which precludes the refund of contributions, and interest or fund earnings, to active members and only permits the refund of contributions with interest to members who are ineligible to receive a pension. As a result, the trial court did not err in vacating Paragraph 8 of the arbitrators' award which carried over the foregoing violative pension contribution provisions of the former CBA to the successor agreement for the initial year of the successor agreement.[4]

such return of contributions shall reduce or eliminate any entitlement to refunds pursuant to section 9. No borough ... making such return or member receiving such return shall be required to restore to the fund any such contributions, interest or fund earnings.

53 P.S. § 772(c).

In turn, Section 9 of Act 600 provides, in pertinent part:

Any member of a police force of a borough ... who for any reason whatsoever, shall be ineligible to receive a pension after having contributed any charges to a police pension fund established pursuant to the provisions of this act, or to a police pension fund existing on the effective date of this act supplanted by a police pension fund established pursuant to the provisions of this act, shall be entitled to a refund of all such moneys paid by him into such funds plus all interest earned by such moneys while in the police pension fund, less any return of contributions and interest made to members pursuant to section 6, as determined by regulations of the governing body immediately upon discontinuance of his employment with the police force....

53 P.S. § 775.

4. See, e.g., *Municipality of Monroeville,* 767 A.2d at 600–601, wherein this Court stated the following:

In [*Lee v. Municipality of Bethel Park,* 722 A.2d 1165 (Pa.Cmwlth.1999) ], this Court followed the decision in [*Borough of Dormont v. Dormont Borough Police Department,* 654 A.2d 69 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995),] and held that where there is an interest arbitration award, an employer may subsequently assert the illegality of a condition or provision because it did not have the opportunity to do so during the bargaining process. Moreover, a board of arbitrators exceeds its power when an award requires a municipality to take an action that is prohibited by statutory law. *Swatara Township v. Swatara Township Police Department,* [642 A.2d 660 (Pa.Cmwlth. 1994)], *petition for allowance of appeal denied,* 540 Pa. 589, 655 A.2d 519 (1995). In *Swatara,* this Court stated as follows:

In cases where both Act 111 and Act 600 are applicable, we have held that the provisions of Act 600 limit the authority granted by Act 111 with respect to arbitration. In [*In re Arbitration Between* ] *Borough of Berwick* [*and* ] *Borough of Berwick Police Dep't,* [618 A.2d 1185 (Pa.Cmwlth.1992), *petition for allowance of appeal denied,* 536 Pa. 647, 639 A.2d 33 (1994)], where arbitrators violated Act 600 by permitting police to retire after only twenty years of service, we stated that:

Accordingly, unlike the Majority, I would affirm the trial court's order in all respects.[5]

there must be excluded from the scope of the Act [Act 111] and necessarily outside of the definition of bargainable issues, any subject which would require the government employer to perform any duty or to take some action which is specifically or impliedly prohibited by the statutory law governing its affairs. Such subjects are, of course, equally beyond the scope of an arbitration award.

*Swatara,* 642 A.2d at 662 (footnote omitted) (quoting *Borough of Berwick,* 618 A.2d at 1188).

5. It is well settled that this Court may affirm the decision of the trial court on any basis, without regard to the basis on which the trial court below relied. *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000).