# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Keith Grube, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 76 C.D. 2018 |
| | : | Argued: March 12, 2019 |
| Pennsylvania Labor Relations Board, | : | |
| Respondent | : | |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: April 2, 2019**

Before this Court is a petition for review filed by Keith Grube (Grube) from an order of the Pennsylvania Labor Relations Board (Board). The Board dismissed Grube's exceptions and made absolute and final a hearing examiner's proposed order dismissing Grube's decertification petition for failure to establish the requisite showing of interest. Upon review, we affirm the Board's order.

## I. Background

In January 1972, the Board certified the American Federation of State, County and Municipal Employees, Council 13 (AFSCME) as the exclusive representative of a bargaining unit comprised of all Commonwealth professional inspection, investigation, and safety services employees. The certification does not exclude nonmembers of the union from the bargaining unit. AFSCME has served as the bargaining unit's exclusive representative since that time.

In April 2016, Grube filed a petition for decertification of AFSCME as the bargaining unit's exclusive representative. Grube was a member of the bargaining unit at the time he filed his decertification petition.

In support of the petition, Grube attached 457 authorization cards ostensibly signed by bargaining unit members. Grube obtained a list of bargaining unit members through a request under the Right-to-Know Law.[1] That list contained 1305 names. Grube therefore concluded that the 457 cards he submitted exceeded the 30% showing of interest required to trigger a hearing and an election pursuant to Section 607 of the Public Employe Relations Act (PERA),[2] 43 P.S. §1101.607.

Upon receiving Grube's decertification petition, the Board requested a list of bargaining unit members from the Commonwealth. That list included names not subject to disclosure on the list provided to Grube under his Right-to-Know Law request. The Commonwealth's list contained 1524 names. Thus, the Board calculated that Grube needed to submit at least 458 valid authorization cards to reach the 30% minimum showing of interest.

After reviewing the authorization cards, the Secretary of the Board determined Grube did not submit a sufficient number of cards completed by bargaining unit employees with original signatures and dates to demonstrate the minimum 30% interest. Accordingly, the Secretary dismissed the decertification petition as unsupported by the requisite showing of interest.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101 – 67.3104.

[2] Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§1101.101 – 1101.2301.

Grube filed exceptions with the Board, asserting that the Commonwealth's list of bargaining unit members was inaccurate. The Board remanded the matter to the Secretary for a hearing limited to the issue of the accuracy of the Commonwealth's list of bargaining unit members. In its remand order, the Board expressly noted that while the accuracy of an employee list may be subject to challenge in a hearing, the adequacy of a showing of interest through authorization cards is an administrative matter not subject to collateral attack in a hearing.[3]

The Secretary scheduled a hearing on Grube's decertification petition.[4] The Commonwealth presented evidence that it obtained its list of bargaining unit employees from its computerized records, and that the list included all employees, both union members and nonmembers, who were employed in the bargaining unit on the day the list was generated.

Grube offered no evidence refuting the accuracy of the Commonwealth's list. Accordingly, the hearing examiner found the Commonwealth's list provided an accurate count of the bargaining unit members.

Despite the limited purpose of the Board's remand, the hearing examiner also reviewed the authorization cards submitted in support of Grube's petition. The hearing examiner concluded a substantial number of the cards were

---

[3] See 34 Pa. Code §95.17.

[4] The hearing also related to a similar petition for decertification filed by Daniel Angelucci (Angelucci), another member of the bargaining unit. Angelucci filed a similar petition for review in this Court, which we adjudicate at Angelucci v. Pennsylvania Labor Relations Board (Pa. Cmwlth., No. 75 C.D. 2018, filed April 2, 2019).

duplicative, were completed by persons not listed in the bargaining unit, or lacked original signatures or dates.

The hearing examiner issued a decision determining that the Commonwealth's lists were accurate and that Grube failed to support his petition with the requisite 30% minimum showing of interest. Grube filed exceptions with the Board.

The Board upheld the hearing examiner's finding that the list of bargaining unit members provided by the Commonwealth to the Board was accurate. The Board rejected Grube's argument that he reasonably relied on the list he received through his Right-to-Know Law request. The Board found nothing in the law authorizing reliance on an inaccurate bargaining unit list.

Grube also argued he was entitled to information concerning the precise number of authorization cards excluded in relation to each petition, as well as the reason for each exclusion. The Board rejected this argument as well. The Board reiterated that its determination of the adequacy of a showing of interest is an administrative function not subject to collateral attack. The Board noted, moreover, that a substantial number of defective cards were submitted in support of the petition.

Further, the Board observed that Grube specifically stated in his exceptions that he submitted 457 authorization cards. The Board found that was a

facially inadequate number because a minimum of 458 acceptable cards were required.[5]

## II. Discussion
### A. Grube's Legal Arguments

On appeal,[6] Grube argues the Board erred by including nonmembers of the union in calculating the number of authorization cards needed to constitute 30% of the bargaining unit. Grube insists nonunion members cannot vote and therefore should not be counted.

Grube also challenges the Board's refusal to provide detailed information concerning the number of rejected authorization cards and the specific reason for rejecting each. Grube contends the Board could provide sufficient information to allow him to assess the propriety of the Board's rejection of each card, without providing personally identifiable information on the employee whose signature is at issue. Grube posits that the Board should provide transparency in this regard.

---

[5] As discussed in the analysis below, the 30% minimum showing of interest is a statutory mandate. Grube's submission of 457 authorization cards from a bargaining unit of 1524 members constituted 29.987%, less than the mandatory 30% minimum.

[6] This Court's review of the Board's decisions is limited to determining whether the Board's findings are supported by substantial and legally credible evidence and whether its conclusions are reasonable and not arbitrary, capricious, or illegal. Kaolin Workers Union v. Pa. Labor Relations Bd., 140 A.3d 748 (Pa. Cmwlth. 2016).

5

In addition, Grube assumes the Board rejected cards with electronic signatures. He contends that the law requires the Board to accept cards with electronic signatures.

Grube also disputes the Board's calculation of the 30% minimum showing of interest. He points out that 30% of 1524 unit members is 457.2. He argues the Board should have rounded that number down to the nearest whole number, 457. Such rounding would make Grube's 457 authorization cards sufficient to establish the 30% minimum showing of interest (assuming no card was rejected for any reason by the Board).

## B. Legal Analysis
## 1. Inclusion of Nonunion Members in 30% Calculation

Grube contends employees who are part of the bargaining unit but who are not union members have no voting rights. He reasons that those employees should not count in the Board's calculation of the 30% minimum showing of interest required to trigger a decertification hearing and election. This Court discerns no merit in this argument.

As the Board correctly observes, Section 603(a) of PERA expresses the requisite 30% showing of interest as a percentage of the employees within a bargaining unit, not as a percentage of union members. See 43 P.S. §1101.603(a), (c); accord Section 7(c) of the Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §211.7(c) (parallel 30% showing of interest requirement under Pennsylvania Labor Relations Act[7]). Grube offers no support for his assertion that the 30% showing of

---

[7] Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. §§211.1 – 211.13.

interest required by Section 607 of PERA applies to a different group of employees from the 30% showing required under Section 603. The Board's regulations likewise express the requisite showing of interest as 30% of the employees in the bargaining unit. See 34 Pa. Code §§95.14(8), 95.21(2). The bargaining unit, as certified by the Board in 1972, includes all Commonwealth professional inspection, investigation, and safety services employees, not just those who choose to join AFSCME.

Thus, nothing in PERA suggests the 30% showing of interest bears any relation to voting rights.

Moreover, the Board is also correct in its conclusion that voting in any election is not limited to union members. "Employes who are hired and working in the payroll period immediately preceding issuance of the order directing the election shall be eligible to vote in the election, if they remain employed when the election takes place." 34 Pa. Code §95.54(a). Thus, all employees in the bargaining unit are entitled to vote on decertification. Grube's argument to the contrary is incorrect. Accordingly, there is no legal basis to limit the requisite 30% showing of interest to union members only.

### 2. Board's Basis for Rejecting Individual Cards

Section 605(2) of PERA grants the Board broad discretion in administering elections, including authority to enact regulations guaranteeing secrecy of ballots. 43 P.S. §1101.605(2). Pursuant to that authority, the Board enacted a regulation to safeguard the secrecy of authorization cards submitted in support of a decertification petition: "The showing of interest submitted will not be

7

furnished to any of the parties. The Board or its agents will determine the adequacy of the showing of interest and such decision will not be subject to collateral attack in a hearing." 34 Pa. Code §95.17.

Despite this regulation, Grube argues he is entitled to transparency allowing him to know the Board's reason for each rejection of an authorization card. Grube suggests no duty of secrecy will be breached thereby, because having gathered the cards, he already has possession of them and thus knows the identities of the signing employees. Again, this Court discerns no merit in this argument.

First, the Board's reasons for rejecting specific cards has no relevance other than in challenging the Board's decisions concerning those cards. The Board's regulation expressly precludes collateral attacks on those decisions. Therefore, Grube fails to articulate a legitimate basis for obtaining such information from the Board.

Further, Grube's argument ignores the secrecy issue that would arise regarding the other parties if the Board disclosed information concerning the rejected cards. Grube may know the identities of the signatory employees, but AFSCME, a party by intervention, does not, and it is not entitled to that information. Providing information to Grube but not to AFSCME would be problematic. Thus, the Board is entitled to enforce its regulation and decline to provide information on its card rejections to any party.

Grube suggests the Board could provide general information, such as numbers of cards rejected for each category of reason (e.g., duplication, non-employee status, absence of signature or date), without providing individual identities of the persons who provided the cards. However, this procedure would not cure the lack of relevance discussed above, as the obvious purpose of the information still would be an impermissible collateral attack on the Board's card rejections. Therefore, the Board acted within its discretion in declining to provide its reasoning for individual card rejections.

### 3. Board's Rejection of Electronic Signatures

Grube argues the Board improperly rejected authorization cards with electronic signatures. However, as the Board correctly observes, Grube did not raise this issue before the Board. Therefore, he failed to preserve the issue for review by this Court. See 34 Pa. Code §95.98(a)(3) (exception to hearing examiner's decision is waived if not specifically raised before the Board); Pa. R.A.P. 1551(a) (appellate court reviewing decision of government unit shall not hear or consider any question not raised before the government unit).

In addition, the argument lacks merit. The Electronic Transactions Act,[8] on which Grube relies, provides, in Section 502(a): "Each governmental agency in this Commonwealth shall determine whether and the extent to which it will send and accept electronic records and electronic signatures to and from other persons and otherwise create, generate, communicate, store, process, use and rely upon electronic records and electronic signatures." 73 P.S. §2260.502(a). Section

---

[8] Act of December 16, 1999, P.L. 971, as amended, 73 P.S. §§2260.101 – 2260.5101.

9

502(c) provides further: "This chapter does not require a governmental agency to use or permit the use of electronic records or electronic signatures." 73 P.S. §2260.502(c). Thus, contrary to Grube's contention, the Board is not statutorily required to accept electronic signatures.

The Board's applicable regulation requires written cards, signed and dated by employees. See 34 Pa. Code §95.1.[9] The Board's construction of its governing statute through its regulation requiring original signatures on authorization cards is reasonable, within its discretion, and not subject to substitution of a reviewing court's interpretation. See Kaolin Workers Union v. Pa. Labor Relations Bd., 140 A.3d 748 (Pa. Cmwlth. 2016).

Moreover, even if Grube's argument were otherwise meritorious, that could not affect the outcome of this Court's review. Acceptance of the authorization cards with electronic signatures would not bring the number of accepted cards to the requisite total, because there were cards with other defects, including duplicates and cards signed by persons who were not members of the bargaining unit.

Indeed, as explained below, the authorization cards attached to the decertification petition were facially below the requisite number. Therefore, accepting some, or even all, of the signatures rejected by the Board would not remedy the decertification petition's fatal defect.

---

[9] At oral argument, the Board also noted that its general regulation relating to filing of papers requires: "An original and three copies of papers, pleadings, briefs or other documents to be filed with the Board shall be submitted to the Board, unless otherwise specified." 34 Pa. Code §95.42(e).

10

### 4. Calculation of 30% Showing of Interest

Section 603(a) and (c) of PERA require a showing of interest by 30% or more of the employees in a bargaining unit. 43 P.S. §1101.603(a), (c). Similarly, the Board's regulations require a showing of interest by not less than 30% of the employees in a bargaining unit. 34 Pa. Code §§95.14(8), 95.21(2). Grube offers no basis for rounding down the required number of authorization cards, where doing so will bring that number below the mandatory 30% threshold.

As noted above, Grube submitted 457 authorization cards from a bargaining unit of 1524 members. That constituted a 29.987% showing of interest, indisputably less than 30%. A 30% showing of interest required 457.2 authorization cards. Of course, a petitioner must submit a whole number of authorization cards for a showing of interest. Because 30% is the mandatory minimum showing of interest, the card requirement must be rounded up to the next whole number.

Further, even if rounding down were arguably permissible under PERA, the Board is entitled to deference in its interpretation of its governing statute. Kaolin Workers. The Board's construction of the 30% minimum requirement is consistent with the plain language of PERA. Accordingly, that construction is reasonable and not subject to substitution of this Court's judgment. See id. (refusing to substitute judicial discretion for administrative discretion).

Accordingly, Grube had to submit at least 458 valid authorization cards in order to support his petition with the mandatory minimum 30% showing of interest. In his exceptions, he specifically acknowledged that he filed 457 cards.

Thus, his petition facially failed to comply with the 30% minimum showing of interest.

Additionally, rounding down to 457 the number of required cards would not support reversal of the Board's order. Every one of those 457 cards would have to be valid in order to meet the minimum 30% threshold. However, the Board's decision made clear that a substantial number of cards were defective on various bases, including duplicate cards and signatures by persons not members of the bargaining unit. Although Grube challenged the Board's rejection of electronic signatures, he did not challenge any rejections arising either from duplication or from signatures of persons not within the bargaining unit. Thus, Grube failed to establish the minimum 30% showing of interest, regardless of whether the minimum number of cards needed was 457 or 458.

The Board correctly dismissed the petition for failure to provide a 30% showing of interest.

### III. Conclusion

Based on the foregoing discussion, this Court affirms the Board's order dismissing Grube's exceptions and making absolute and final the hearing examiner's proposed order of dismissal.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keith Grube,                          :
                    Petitioner        :
                                      :
          v.                          :    No. 76 C.D. 2018
                                      :
Pennsylvania Labor Relations Board,   :
Respondent                            :

# **O R D E R**

**AND NOW**, this 2nd day of April, 2019, the order of the Pennsylvania Labor Relations Board is **AFFIRMED**.

 

 

 

 

 
                          _____
                          ROBERT SIMPSON, Judge